# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
### NORTHAMPTON _____ County

COPY

**For Prothonotary Use Only:**

Docket No:

C-48-CV-2021- 03907

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| CONVENIENCE COLLISION, INC. | TRAVELERS INDEMNITY COMPANY\ |

**Are money damages requested?** [x] Yes  [ ] No

Dollar Amount Requested: (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes  [x] No

**Is this an *MDJ Appeal*?** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: Jeremy F. Clark, Esq.

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

_____

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [x] Other:
  BREACH OF CONTRACT
  BAD FAITH INSURANCE

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

**EXHIBIT**
A

*Updated 1/1/2011*



COPY

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

CONVENIENCE COLLISION, INC.,
    Plaintiff

    v.

TRAVELERS INDEMNITY COMPANY,
    Defendant

No. CV-2021- 03907

JURY TRIAL DEMANDED

## NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty **(20) days** after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

Usted ha sido demandado en la Corte. Si desea defenderse de las reivindicaciones expuestas en las siguientes páginas, usted debe tomar medidas dentro de los veinte (20) días después de la presente demanda y se sirven aviso, mediante la introducción de un aspecto escrito, personalmente o mediante abogado y presentar por escrito ante el Tribunal su defensas u objeciones a las alegaciones expuestas en su contra. Se le advierte que si no lo hace el caso puede proceder sin ti y se podrá entablar juicio en su contra por el Tribunal sin previo aviso por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o compensación solicitada por la demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE TOMAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, dirigirse o llamar a la oficina indicada más adelante. ESTA OFICINA le puede proporcionar información acerca de contratar a un abogado.

LAWYER REFERRAL SERVICE – SERVICIO DE REFERENCIA E INFORMACION LEGAL
PO. BOX 4733
Easton, PA  18042
(610) 258-6333

Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

CONVENIENCE COLLISION, INC.,
Plaintiff

v.

TRAVELERS INDEMNITY COMPANY,
Defendant

No. CV-2021- 03907

JURY TRIAL DEMANDED

## **COMPLAINT**

**AND NOW,** comes the Plaintiff, Convenience Collision, Inc., by

and through its counsel, Jeremy F. Clark, Esquire, with the following

Complaint and in support thereof respectfully aver as follows:

## **The Parties**

1. Plaintiff, Convenience Collision, Inc. ("CCI") is a Pennsylvania

   corporation with a principal place of business located at 251

   Erdman St, Bangor, Northampton County, Pennsylvania,18013.

2. Upon information and belief, the Defendant, Travelers Indemnity

   Company, is licensed to sell personal automobile insurance policies

   within the Commonwealth of Pennsylvania and has a principal place

   of business located at One Tower Square, Hartford, CT 06183.

3. Martin Burke ("Mr. Burke"), is an adult individual residing at 2100
   Quincy Avenue, Easton, PA 18045. At all relevant times hereto, Mr.
   Burke, was an insured of the Defendant.

## The Facts

4. On or about April 9, 2019 the Mr. Burke was involved in a motor
   vehicle accident resulting in damage to a 2018 Chevrolet Silverado
   ("the Vehicle"), which was insured by the Defendant.

5. At the time of the accident, Mr. Burke was covered under a
   Pennsylvania automobile insurance policy, specifically, policy
   number PT5010A6024955812031.  A true and correct copy of the
   policy, is attached hereto, incorporated herein, and marked as
   **Exhibit A**.

6. The accident, more specifically, involved Mr. Burke striking a deer.

7. Mr. Burke timely reported the loss to the Defendant which assigned
   a claim number IBG8742001.

8. On or about April 16, 2019, Christopher Sitar, an agent/adjuster of
   the Defendant, completed an estimated value of the loss of
   $3,398.57 and after reducing the sum by Mr. Burke's deductible,
   issued a check in the amount of $3,148.57.

9. As a result of this accident and the subsequent estimate of the Defendant, Mr. Burke requested CCI to tow the vehicle to its shop on or about April 30, 2019.

10. On or about May 2, 2019, CCI completes its preliminary estimate of the damages to the Vehicle for the amount of $14,840.31 and contacted Defendant to request a supplement.

11. David Gross, an agent/adjuster for the Defendant, did re-inspect the vehicle and issue a supplement for an additional $2,797.80 and sent a check in this amount to Mr. Burke.

12. CCI performed all repairs necessary to return the Vehicle to its pre-loss condition.

13. CCI repaired the Vehicle in accordance with all industry best practices, original vehicle manufacture's guidelines, and applicable state laws and regulations.

14. The total cost for all parts and labor on the Vehicle was $16,895.21. A true and correct copy of the final bill for the repair, is attached hereto, incorporated herein, and marked as **Exhibit B.**

15. David Gross, an agent/adjuster for the Defendant, again re-inspected the vehicle and issued another supplement for an additional $1,427.96.

16. At all times while inspecting and repairing the Vehicle, CCI communicated with agents or representatives of Defendant, at the

3

specific direction of the Mr. Burke, in an effort to obtain a proper valuation of the damage to the Vehicle.

17. Despite all reasonable efforts of CCI, including in-person meetings, emails, and phone calls, whereby CCI supported all tasks necessary to repair the Vehicle, Defendant has refused to fully compensate Mr. Burke for the damage.

18. To date, Defendant, or its agents, have paid only $7,624.33 for the work performed.

19. On or about May 24, 2019, Mr. Burke executed a full assignment, in favor of CCI, of all rights or claims against the Defendant in exchange for the release of the Vehicle prior to payment in full for the work actually performed. A true and correct copy of the assignment is attached hereto, incorporated herein, and marked as **Exhibit C.**

20. CCI has made repeated demands for payment in full for the work performed on the Vehicle.

21. To date, Defendant has unreasonably and without justification refused to pay the full amount due.

22. To date, a balance of $9,520.88 remains due and owning by the Defendant for the work actually performed by CCI in repairing the Vehicle.

4

## **COUNT I - BREACH OF CONTRACT**

23. All responses set forth elsewhere within this pleading are incorporated within this section as though each were set forth herein at length.

24. After a motor-vehicle accident, Mr. Burke did bring the Vehicle to CCI in order to have it repaired to its pre-loss condition.

25. Defendant's policy and Pennsylvania law require the insurer to compensate for all repairs necessary to return the Vehicle to its pre-loss condition.

26. CCI repaired the Vehicle as requested by Mr. Burke and returned the Vehicle upon the completion of all work.

27. The Policy states that Defendant will pay the "[a]mount necessary to repair or replace stolen or damaged parts or equipment of the functionally equivalent design and material necessary to restore the vehicle to its pre-loss physical conduction at the time of loss." See Ex. A at PD-4.

28. The estimates of Defendant were wholly inadequate to properly and safely repair the vehicle to it's pre-loss condition.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter and order in its favor and against the Defendant in the amount of $9,520.88, plus costs, statutory interest, and any other relief that maybe deemed appropriate.

5

## <u>COUNT II - BAD FAITH</u>

29. All responses set forth elsewhere within this pleading are incorporated within this section as though each were set forth herein at length.

30. At all relevant times to this Complaint, Defendant acted in bad faith toward its insured in its attempt to resolve the claim without properly compensating the insured.

31. Defendant acted in bad faith by causing undue delay.

32. Defendant unreasonably denied payment for required repair procedures solely to benefit Defendant by reducing the overall cost of the repairs.

33. Defendant acted in bad faith by unreasonably refusing to make payment to its insured for the amount due to Plaintiff and thereby exposing its insured to a potential claim.

34. On or about June 17, 2019, despite a written request by its insured, Defendant refused to provide a formal written denial of coverage.

35. Defendant has refused all reasonable requests to discuss the repairs necessary to return the Vehicle to its pre-loss conditions with either its insured or CCI despite repeated requests.

**WHEREFORE**, Plaintiff, Convenience Collision, Inc., as assignee of Martin Burke the named insured, respectfully requests this Honorable

6

Court enter judgment against the Defendant, for treble damages,

reasonable counsel fees, interest, and costs, for its bad faith denial of

benefits under the insurance policy.

Respectfully submitted,

Jeremy F. Clark, Esquire
Attorney for the Plaintiff
Attorney I.D. 307131
318 Spring Garden Street
Easton, PA 18042
p. (484) 602-5297
lawyer@jeremyfclark.com

June 7, 2021

7

## **VERIFICATION**

I, Matthew Zielenbach, verify that the statements contained in this **Complaint**, are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. § 4904, relating to unsworn falsification to authorities.

Signature: _____

Date: 6/4/2021

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| CONVENIENCE COLLISION, INC.,<br>Plaintiff | No. CV-2021- |
| v. | JURY TRIAL DEMANDED |
| TRAVELERS INDEMNITY COMPANY,<br>Defendant | |

## <u>CONFIDENTIAL INFORMATION AFFIDAVIT</u>

I certify that this filing complies with the provisions of the Case Records

Public Access Policy of the Unified Judicial System of Pennsylvania that

require filing confidential information and documents differently than non-

confidential information and documents.

Respectfully submitted,

Jeremy F. Clark, Esquire
Attorney I.D. 307131
318 Spring Garden Street
Easton, PA 18042
p. (484) 602-5297
lawyer@jeremyfclark.com

June 7, 2021

9

# EXHIBIT A

# EXHIBIT A

Effective: 06/03/2018                                                    T01PA02 (08-17)

## PENNSYLVANIA PERSONAL AUTO POLICY

### YOUR PERSONAL AUTO POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
   **Your Name and Address**
   **Your Auto or Trailer**
   **Policy Period**
   **Coverages and Amounts of Insurance**

|  | Beginning on Page |
|---|---|
| **GENERAL PROVISIONS SECTION** | |
| **AGREEMENT** | GP-1 |
| **GENERAL DEFINITIONS** | GP-1 |
| **DUTIES AFTER AN ACCIDENT OR LOSS** | GP-2 |
| **GENERAL CONDITIONS** | GP-3 |
|    Bankruptcy | GP-3 |
|    Changes | GP-3 |
|    Fraud | GP-4 |
|    Legal Action Against Us | GP-4 |
|    Our Right To Recover Payment | GP-4 |
|    Policy Period And Territory | GP-4 |
|    Transfer Of Your Interest In This Policy | GP-5 |
|    Two Or More Policies Issued To You | GP-5 |
|    Termination | GP-5 |
|    Tort Liability Insurance Options | GP-6 |
|    Constitutionality Clause | GP-6 |
| | |
| **LIABILITY COVERAGE SECTION** | |
| **Coverage A – Bodily Injury** | |
| **Coverage B – Property Damage** | |
|    Insuring Agreement | L-1 |
|    Supplementary Payments | L-1 |
|    Exclusions | L-1 |
|    Limit Of Liability | L-2 |
|    Out Of State Coverage | L-3 |
|    Financial Responsibility | L-3 |
|    Other Insurance | L-3 |
| | |
| **FIRST PARTY BENEFITS COVERAGE SECTION** | |
|    Insuring Agreement | Q-1 |
|       Coverage QA – Basic First Party Benefits | Q-1 |
|       Coverage QB – Basic First Party Benefits | Q-1 |
|       Coverage R – Added First Party Benefits | Q-1 |
|          1.  Option A – Increased Medical Expenses | Q-1 |
|          2.  Option B – Income Loss | Q-1 |
|          3.  Option C – Funeral Expense | Q-1 |
|          4.  Option D – Accidental Death | Q-1 |
|          5.  Options H, J, K and L – Combination First Party Benefits | Q-2 |
|    Definitions | Q-2 |
|    Exclusions | Q-3 |

© 2017 The Travelers Indemnity Company. All rights reserved.

Limit Of Liability .................................................................................... Q-3
Priorities Of Policies .............................................................................. Q-4
Non–Duplication Of Benefits ................................................................. Q-4
Payment Of Accidental Death Benefits ................................................ Q-4

## UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE SECTION

## UNINSURED MOTORISTS COVERAGE

### Coverage D6 – Uninsured Motorists Bodily Injury Stacked
### Coverage D7 – Uninsured Motorists Bodily Injury Non–Stacked

## UNDERINSURED MOTORISTS COVERAGE

### Coverage D8 – Underinsured Motorists Bodily Injury Stacked
### Coverage D9 – Underinsured Motorists Bodily Injury Non–Stacked

Insuring Agreement ................................................................................ UIM-1
Exclusions ............................................................................................... UIM-2
Limit Of Liability ...................................................................................... UIM-2
Coverage D6 – Uninsured Motorists Bodily Injury Stacked ............... UIM-2
Coverage D7 – Uninsured Motorists Bodily Injury Non–Stacked ....... UIM-3
Coverage D8 – Underinsured Motorists Bodily Injury Stacked .......... UIM-3
Coverage D9 – Underinsured Motorists Bodily Injury Non–Stacked ... UIM-4
Other Insurance ...................................................................................... UIM-4
Arbitration ................................................................................................ UIM-5

## DAMAGE TO YOUR AUTO COVERAGE SECTION

## Coverage E – Collision
## Coverage F – Comprehensive
## Coverage G – Custom Equipment – Increased Limit

INSURING AGREEMENT ......................................................................... PD-1
ADDITIONAL COVERAGES
A. Airbag Replacement ....................................................................... PD-2
B. Child Safety Seat ............................................................................ PD-2
C. Custom Equipment ........................................................................ PD-2
D. Transportation Expenses .............................................................. PD-2
OPTIONAL COVERAGE
Coverage G – Custom Equipment – Increased Limit ........................ PD-2
EXCLUSIONS ......................................................................................... PD-3
LIMIT OF LIABILITY .............................................................................. PD-4
PAYMENT OF LOSS .............................................................................. PD-4
NO BENEFIT TO BAILEE ...................................................................... PD-4
OTHER SOURCES OF RECOVERY ...................................................... PD-4
APPRAISAL ............................................................................................ PD-5
LOSS PAYABLE CLAUSE ..................................................................... PD-5

SIGNATURE PAGE ................................................................................ S-1

© 2017 The Travelers Indemnity Company. All rights reserved.

G01PA01 (11-16)

# PENNSYLVANIA PERSONAL AUTO POLICY

**Travelers Companies**
Hartford, Connecticut
(Each a Stock Insurance Company)

## GENERAL PROVISIONS SECTION

**Unless otherwise stated, the provisions in this General Provisions Section apply to all Coverage Sections and endorsements of this policy.**

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages you have selected. These are shown by premium entries in the Declarations. The Declarations is a part of this policy.

## GENERAL DEFINITIONS

Throughout this policy:

A. "You" and "your" refer to:
1. The "named insured" shown in the Declarations; and
2. The spouse if a resident of the same household.
   The term spouse includes, if a resident of the same household:
   a. The civil partner of the "named insured", provided such civil union was obtained in a state where a civil union is legally recognized; or
   b. The "domestic partner" of the "named insured".

   If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:
   a. The end of 90 days following the spouse's change of residency;
   b. The effective date of another policy listing the spouse as a named insured; or
   c. The end of the policy period.

B. "We", "us" and "our" refer to the member company of Travelers providing this insurance and shown as the insurer in Item 6 of the Declarations.

C. We consider a private passenger auto, sport utility vehicle, pickup or van to be owned by a person if leased:
1. Under a written agreement to that person; and
2. For a continuous period of at least 6 months.

D. "Minimum limits" refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:
1. $15,000 for each person, subject to $30,000 for each accident with respect to "bodily injury"; and
2. $5,000 for each accident with respect to "property damage".

Other words and phrases are defined. They are in quotation marks when used.

E. "Bodily injury" means bodily harm, sickness or disease, including death that results.

F. "Business" includes trade, profession or occupation.

G. "Domestic partner" means a person who is in a continuing spouse-like relationship with a named insured for the purpose of a domestic life. Both persons must be 18 years of age or older and may not be related to each other by blood. Neither may be married to another person, or be a "domestic partner" or partner by civil union of any other person.

H. "Economic loss" means medical and other out of pocket expenses.

I. "Newly acquired auto":
1. "Newly acquired auto" means any of the following types of vehicles of which you become the owner during the policy period:
   a. A private passenger auto or sport utility vehicle; or
   b. A pickup or van, for which no other insurance policy provides coverage, that:
      (1) Has a Gross Vehicle Weight Rating of 9,000 lbs. or less; and

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) Is not used for the delivery or transportation of goods and materials unless such use is:
(a) Incidental to your "business" of installing, maintaining or repairing furnishings and equipment; or
(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described in 3.a. and 3.b. below.
3. Coverage for a "newly acquired auto" depends on whether the vehicle is in addition to or replaces a vehicle shown in the Declarations.
   a. A "newly acquired auto" which is in addition to any vehicle shown in the Declarations will have the broadest coverage we provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for coverage to apply you must ask us to insure it within 30 days after you become the owner.
   b. If a "newly acquired auto" replaces a vehicle shown in the Declarations, it will have the same coverage as the vehicle it replaced without your having to ask us to insure it. However, you must ask us to insure a replacement vehicle within 30 days if:
      (1) You wish to add or continue any coverage provided in the Damage To Your Auto Coverage Section; or
      (2) It is a pickup or van used in any "business" other than farming or ranching.

J. "Non-economic loss" means pain and suffering and other nonmonetary damages.

K. "Occupying" means:
   1. In;
   2. Upon; or
   3. Getting in, on, out or off.
L. "Property damage" means physical injury to, destruction of or loss of use of tangible property.
M. "Resident relative" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child. Your unmarried dependent children, wards, and foster children while temporarily away from home will be considered residents if they intend to resume residing in your household.
N. "Serious injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.
O. "Trailer" means a vehicle designed to be pulled by a:
   1. Private passenger auto or sport utility vehicle; or
   2. Pickup or van.
   It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.
P. "Your covered auto" means:
   1. Any vehicle shown in the Declarations.
   2. A "newly acquired auto".
   3. Any "trailer" you own.
   4. Any private passenger auto, sport utility vehicle, pickup, van or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
      a. Breakdown;
      b. Repair;
      c. Servicing;
      d. Loss;
      e. Destruction; or
      f. Being inspected or transported by a motor vehicle dealer as defined by the Pennsylvania Board of Vehicles Act.
   This provision (P.4.) does not apply to the Damage To Your Auto Coverage Section.

## DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
B. A person seeking any coverage must:
   1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same. We may require such exam under oath:
      (1) From other persons insured under this policy (including a "resident relative").

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(2) Be done separately and outside the presence of any witnesses or persons insured or seeking benefits under this policy.
4. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.
5. Submit a proof of loss when required by us.

**Additional Duties For Uninsured Motorists Coverage**

If Coverage D6 – Uninsured Motorists Coverage Bodily Injury Stacked or Coverage D7 – Uninsured Motorists Coverage Bodily Injury Non-Stacked is shown in the Declarations, a person seeking coverage must also promptly:
A. Notify the police if a hit-and-run driver is involved.
B. Send us copies of the legal papers if a suit is brought.

**Additional Duty For Underinsured Motorists Coverage**

If Coverage D8 – Underinsured Motorists Coverage Bodily Injury Stacked or Coverage D9 – Underinsured Motorists Coverage Bodily Injury Non-Stacked is shown in the Declarations, a person seeking coverage under the Underinsured Motorists Coverage Section must also promptly send us copies of the legal papers if a suit is brought.

**Additional Duties For Collision And Comprehensive Coverages**

If Coverage E – Collision or Coverage F – Comprehensive is shown in the Declarations, a person seeking coverage must also:
A. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
B. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

C. Permit us to inspect and appraise the damaged property before its repair or disposal.

**Additional Duties For First Party Benefits Coverage**

If any First Party Benefits Coverage is shown in the Declarations and benefits are sought:
A. As soon as practical the "insured", or someone on his or her behalf, shall provide to us or any of our authorized agents written notice adequately identifying the "insured" and reasonably accessible facts concerning the time, place and circumstances of the accident.
B. As soon as practicable the "insured", or someone on his or her behalf, shall: give us proof of claim, under oath if required, fully describing the nature and extent of "bodily injury", treatment and rehabilitation received and contemplated and other information to assist us in determining the amount due and payable. Proof of claim shall be made upon forms furnished by us unless we fail to supply such forms within 15 days after receiving notice of claim.
C. The "insured" shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the costs of such examinations.
D. The "insured" (or, in the event of such person's incapacity or death, his or her legal representative) shall, if we request, sign papers to enable us to obtain medical reports and copies of records. A copy of such medical report will be forwarded to such "insured" upon his or her written request.
E. If "income loss" benefits are claimed, the "insured" presenting such claim shall authorize us to obtain details of all earnings paid to him or her by an employer or earned by him or her since the time of the injury or during the year immediately preceding the date of the accident.

## GENERAL CONDITIONS

**Bankruptcy**

Bankruptcy or insolvency of the "insured" will not relieve us of any obligations under this policy.

**Changes**

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:
1. The number, type or use of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles; or
4. Coverage, deductible or limits.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

If a change resulting from A. or B. above requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general policy revision that includes both broadenings and restrictions in coverage, whether that general policy revision is implemented through introduction of:
1. A subsequent edition of your policy or any of its Coverage Sections; or
2. An amendatory endorsement.

**Fraud**

We do not provide coverage for any person under this policy who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

**Legal Action Against Us**

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverage Section, no legal action may be brought against us until:
1. We agree in writing that the "insured" has an obligation to pay; or
2. The amount of that obligation has been finally determined by judgment after trial.
B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

**Our Right To Recover Payment**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we are subrogated to that right. That person must do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
However, our rights in this Paragraph (A.) do not apply under the Damage To Your Auto Coverage Section, against any person using "your covered auto" with a reasonable belief that such person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person must:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment less reasonable attorney fees and a proportionate share of the cost of recovery.
C. Our rights do not apply under Paragraph A. with respect to Underinsured Motorists Coverage if we:
1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and
2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification.
If we advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification:
1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and
2. We also have a right to recover the advanced payment.

**Policy Period And Territory**

A. This policy applies only to accidents and losses which occur:
1. During the policy period shown in the Declarations; and
2. Within the policy territory.
B. The policy territory is:
1. The United States of America, its territories or possessions;
2. Puerto Rico; or
3. Canada.
This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

G01PA01 (11-16)

**Transfer Of Your Interest In This Policy**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:
1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and
2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".
B. Coverage will only be provided until the next anniversary of the policy's original effective date.

**Two Or More Policies Issued To You**

If this policy and any other auto insurance policy issued to you by us or any of our personal insurance affiliates apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to Coverage D6 – Uninsured Motorists Bodily Injury Stacked; or Coverage D8 – Underinsured Motorists Bodily Injury Stacked.

No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 – Uninsured Motorists Bodily Injury Stacked; or Coverage D8 – Underinsured Motorists Bodily Injury Stacked

**Termination**

A. Cancellation
This policy may be cancelled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. Returning this policy to us; or
b. Giving us advance written notice of the date cancellation is to take effect.
We may accept another form of notice from the named insured. If there is more than one person shown as named insured in the Declarations, any named insured may cancel this policy. The cancellation by one named insured will be binding on any other named insured.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
a. At least 15 days notice of cancellation:
(1) If notice is effective within the first 60 days this policy in effect and this is not a renewal or continuation policy;
(2) For nonpayment of premium;
(3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or
b. At least 60 days notice if the policy was obtained through material misrepresentation.
3. Nonpayment of premium means the failure to pay any premium or premium installment or any other financial obligation when due.
4. Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

B. Nonrenewal
If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 60 days before the end of the policy period. Subject to this notice requirement, if the policy period is other than one year, we will have the right not to renew or continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.
However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

C. Automatic Termination
1. The policy will automatically terminate on the expiration date of any annual policy period without notice if you fail to pay the renewal premium when due. Failure to pay the required renewal premium when due means that you have not accepted our offer.
2. This policy, if not already terminated under the terms of this condition, will automatically terminate without notice on the effective date of any other automobile insurance policy, but only for any vehicle described in both policies.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D.  Other Termination Provisions
1.  If the law in effect in your state at the time this policy is issued or continued:
    a.  Requires a longer notice period;
    b.  Requires a special form of or procedure for giving notice; or
    c.  Modifies any of the stated termination reasons;

    we will comply with those requirements.
2.  We may deliver any notice instead of mailing it. Proof of mailing of any notice will be sufficient proof of notice.
3.  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.
4.  The effective date of cancellation stated in the notice will become the end of the policy period.

**Tort Liability Insurance Options**

A.  Limited Tort Option
    If the Declarations shows that Coverage QA is provided, the Limited Tort Option applies. Each "insured" who is bound by this option may seek compensation only for "economic loss" suffered because of "bodily injury" caused by accident as the consequence of the fault of another person. However, each "insured" may recover damages as if the "insured" damaged had elected the Full Tort Option:
1.  If the "bodily injury" suffered is a "serious injury"; or
2.  With respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission, in the course of such business, other than a defect in a motor vehicle which is operated by such business; or
3.  If injured while "occupying" a motor vehicle other than a private passenger motor vehicle as defined in the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended; or
4.  If the person at fault:
    a.  is convicted, or accepts Accelerated Rehabilitative Disposition for driving under the influence of alcohol or a controlled substance in that accident; or

    b.  is operating a motor vehicle registered in another state; or
    c.  intends to cause intentional injury; or
    d.  has not maintained financial responsibility as required by Pennsylvania law;
    provided that nothing in Paragraphs a. through d. shall affect the limitation placed on a person against recovering noneconomic damages under Uninsured Motorists or Underinsured Motorists Coverage.

B.  Full Tort Option
    If the Declarations shows that Coverage QB is provided, the Full Tort Option applies. Each "insured" bound by this option may seek compensation for "noneconomic loss" claimed and "economic loss" suffered because of "bodily injury" caused by accident as the consequence of the fault of another person.

C.  Who Is An "Insured"
    As used in Tort Liability Insurance Options, an "insured" means you, any "resident relative" or a minor in the custody of either you or any "resident relative".

D.  Other Insurance
1.  If you are an "insured" under more than one liability insurance policy, and the policies have conflicting tort options, the policy providing the Full Tort Option applies.
2.  If an "insured", other than you, is covered by more than one liability insurance policy, and the policies have conflicting tort options:
    a.  The "insured" is bound by the tort option of the policy associated with the motor vehicle the "insured" is "occupying" at the time of the accident.
    b.  The Full Tort Option applies if the "insured" is not "occupying" a motor vehicle at the time of the accident.

**Constitutionality Clause**

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the policy provisions, subject to the approval of the Insurance Commissioner.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## LIABILITY COVERAGE SECTION
### Coverage A – Bodily Injury
### Coverage B – Property Damage

**Insuring Agreement**

A.  We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.

We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for these coverages has been exhausted by payment of judgments or settlements.

We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.  "Insured" as used in this Coverage Section means:
1.  You or any "resident relative" for the ownership, maintenance or use of any auto or "trailer".
2.  Any person using "your covered auto".
3.  For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Coverage Section.
4.  For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "resident relative" for whom coverage is afforded under this Coverage Section. This provision (4.) applies only if the person or organization does not own or hire the auto or "trailer".

"Insured" does not include:
1.  The United States of America or any of its agencies.
2.  Any person with respect to "bodily injury" or "property damage" resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the "bodily injury" or "property damage".

**Supplementary Payments**

In addition to our limit of liability, we will pay on behalf of an "insured":
1.  Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.
2.  Premiums on appeal bonds and bonds to release attachments in any suit we defend.
3.  Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for these coverages.
4.  Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.
5.  Other reasonable expenses incurred at our request.
6.  Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**Exclusions**

A.  We do not provide Liability Coverage for any "insured":
1.  Who intentionally causes "bodily injury" or "property damage".
2.  For "property damage" to property owned or being transported by that "insured".
3.  For "property damage" to property:
    a.  Rented to;
    b.  Used by; or
    c.  In the care of;
    that "insured".
    This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.
4.  For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.
5.  For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used, or during the period of time it is

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

available for hire, as a public or livery convey-
ance. This Exclusion (A.5.) applies whether
or not there is:
a.   A passenger "occupying" the vehicle; or
b.   Property being transported for a fee in or
     upon the vehicle.
This Exclusion (A.5.) does not apply to a ve-
hicle used for a:
a.   Share-the-expense car pool;
b.   Charitable purpose; or
c.   Volunteer purpose.
6.   While employed or otherwise engaged in the
     "business" of:
a.   Selling;
b.   Repairing;
c.   Servicing;
d.   Storing; or
e.   Parking;
vehicles designed for use mainly on public
highways. This includes road testing and de-
livery. This Exclusion (A.6.) does not apply to
the ownership, maintenance or use of "your
covered auto" by:
a.   You;
b.   Any "resident relative"; or
c.   Any partner, agent or employee of you or
     any "resident relative".
7.   Maintaining or using any vehicle while that
     "insured" is employed or otherwise engaged
     in any "business" (other than farming or
     ranching) not described in Exclusion A.6.
This Exclusion (A.7.) does not apply to the
maintenance or use of a:
a.   Private passenger auto or sport utility ve-
     hicle;
b.   Pickup or van with a Gross Vehicle
     Weight Rating of 9,000 lbs. or less; or
c.   "Trailer" used with a vehicle described in
     a. or b. above.
8.   Using a vehicle without a reasonable belief
     that such "insured" is entitled to do so. This
     Exclusion (A.8.) does not apply to a "resident
     relative" using "your covered auto" which is
     owned by you.
9.   For "bodily injury" or "property damage" for
     which that "insured":
a.   Is an insured under a nuclear energy lia-
     bility policy; or
b.   Would be an insured under a nuclear en-
     ergy liability policy but for its termination
     upon exhaustion of its limit of liability.
A nuclear energy liability policy is a policy is-
sued by any of the following or their succes-
sors:
a.   Nuclear Energy Liability Insurance Asso-
     ciation;
b.   Mutual Atomic Energy Liability Under-
     writers; or

c.   Nuclear Insurance Association of Can-
     ada.
B.  We do not provide Liability Coverage for the own-
    ership, maintenance or use of:
1.   Any vehicle which:
a.   Has fewer than four wheels; or
b.   Is designed mainly for use off public
     roads.
This Exclusion (B.1.) does not apply:
a.   While such vehicle is being used by an
     "insured" in a medical emergency;
b.   To any "trailer"; or
c.   To any non-owned golf cart.
2.   Any vehicle, other than "your covered auto",
     which is:
a.   Owned by you; or
b.   Furnished or available for your regular
     use.
3.   Any vehicle, other than "your covered auto",
     which is:
a.   Owned by any "resident relative"; or
b.   Furnished or available for the regular use
     of any "resident relative".
However, this Exclusion (B.3.) does not apply
to you while you are maintaining or "occupy-
ing" any vehicle which is:
a.   Owned by a "resident relative"; or
b.   Furnished or available for the regular use
     of a "resident relative".
4.   Any vehicle while participating or competing
     in, or practicing or preparing for, any prear-
     ranged or organized:
a.   Racing contest, meet or rally, whether
     against another vehicle or against time;
b.   Demolition contest;
c.   Stunting activity; or
d.   High performance driving or racing in-
     struction course or school.
This Exclusion (B.4.) applies only while the
vehicle is at a location, whether temporary or
permanent, established for any of the activi-
ties listed above.
5.   "Your covered auto" during a period it is
     rented or leased to others. However, this Ex-
     clusion (B.5.) does not apply to the operation
     of "your covered auto" by you or a "resident
     relative".

**Limit Of Liability**

A.  Split Limits
    If the Declarations shows separate limits of liabil-
    ity for Coverage A and Coverage B:
    The limit of liability shown in the Declarations for
    each person for Coverage A is our maximum limit
    of liability for all damages, including damages for
    care, loss of services or death, arising out of "bod-
    ily injury" sustained by any one person in any one
    auto accident.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

L01PA02 (11-16)

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Coverage A is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Coverage B is our maximum limit of liability for all "property damage" resulting from any one auto accident.

These limits are the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. Single Limit
1. If the Declarations shows a single limit of liability for Coverage A and Coverage B combined:
   The limit of liability shown is our maximum limit of liability for all damages arising out of "bodily injury" and "property damage" resulting from any one auto accident.
   This is the most we will pay regardless of the number of:
   a. "Insureds";
   b. Claims made;
   c. Vehicles or premiums shown in the Declarations; or
   d. Vehicles involved in the auto accident.
2. We will apply the limit of liability to provide any separate minimum limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage Section and:
1. Any other Coverage Section or part of this policy; or
2. Any other personal auto policy issued to you by us or any of our affiliates.

**Out Of State Coverage**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
A. If the state or province has:
   1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, this policy will provide the higher specified limit.
   2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, this policy will provide at least the required minimum amounts and types of coverage.
B. No one will be entitled to duplicate payments for the same elements of loss.

**Financial Responsibility**

When this policy is certified as future proof of financial responsibility, this policy will comply with the law to the extent required.

**Other Insurance**

If there is other applicable liability insurance available, any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance. However, any insurance we provide for a vehicle you do not own while used as a temporary substitute for "your covered auto" that is provided by a motor vehicle dealer, as defined in the Pennsylvania Board of Vehicles Act, shall be primary.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Q01PA01 (08-17)

## FIRST PARTY BENEFITS COVERAGE SECTION

**Insuring Agreement**

**A. Coverage QA\* – Basic First Party Benefit**
**Coverage QB\*\* – Basic First Party Benefit**

\* Indicates that the limited tort option described in "the act" was selected.
\*\* Indicates that the full tort option described in "the act" was selected.

We will pay Basic First Party Benefits consisting of Basic "Medical Expenses" to or for an "insured" who sustains "bodily injury" caused by accident arising out of the maintenance or use of a "motor vehicle". Our Limit of Liability for Basic "Medical Expenses" is $5,000.

**B. Coverage R – Added First Party Benefits**

If Coverage R appears in the Declarations, we will pay in addition to the Basic First Party Benefit, Added First Party Benefits to or for an "insured" who sustains "bodily injury" caused by an accident arising out of the maintenance or use of a "motor vehicle". Added First Party Benefits consist of the following if shown as applicable in the Declarations:
  a. Increased "medical expenses";
  b. "Income loss";
  c. "Funeral expense"; and
  d. "Accidental death".

**1. Option A – Increased Medical Expenses.**

This option applies if option "A4", "A5", "A6", or "A7" appears in the Declarations following Coverage R.
The Limit of Liability for the Basic Medical Expenses is increased to the amount shown in the following schedule for the "A" option shown in the Declarations.

**A Option Schedule**

| Option | Amount |
|--------|--------|
| A4 | $10,000 |
| A5 | $25,000 |
| A6 | $50,000 |
| A7 | $100,000 |

**2. Option B – Income Loss.**

This option applies if option "B4", "B5", "B6", "B7", or "B8" appears in the Declarations following Coverage R.
The Limit of Liability for "income loss" is the "Maximum Amount" shown in the following schedule for the "B" option shown in the Declarations. The Limit of Liability for any one month is the "Monthly Amount" shown for that option in the following schedule.

**B Option Schedule**

| Option | Maximum Amount | Monthly Amount |
|--------|---------------|----------------|
| B4 | $15,000 | $1,500 |
| B5 | $5,000 | $1,000 |
| B6 | $15,000 | $1,000 |
| B7 | $25,000 | $1,500 |
| B8 | $50,000 | $2,500 |

**3. Option C – Funeral Expense.**

This option applies if option "C6" or "C7" appears in the Declarations following Coverage R.
The Limit of Liability for "funeral expense" is the amount shown in the following schedule for the "C" option shown in the Declarations.

**C Option Schedule**

| Option | Amount |
|--------|--------|
| C6 | $1,500 |
| C7 | $2,500 |

**4. Option D – Accidental Death.**

This option applies if option "D6", "D7" or "D8" appears in the Declarations following Coverage R.
The Limit of Liability for "accidental death" is the amount shown in the following schedule for the "D" option shown in the Declarations.

**D Option Schedule**

| Option | Amount |
|--------|--------|
| D6 | $5,000 |
| D7 | $10,000 |
| D8 | $25,000 |

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Q01PA01 (08-17)

5. **Options H, J, K and L – Combination First Party Benefits.**

One of these options apply if option "H", "J", "K", or "L" appears in the Declarations following Coverage R.

The Limit of Liability for Basic "Medical Expenses", Increased "Medical Expenses", "Income Loss", "Funeral Expense" and "Accidental Death" combined is the amount shown as "total limit" in the following schedule for the option shown in the Declarations. The "total limit" is the most we will pay as a result of "bodily injury" to any one "insured" as the result of any one accident. However, the most we will pay for:

a. "Funeral Expense" is $2,500.
b. "Accidental Death" is the amount shown as "Accidental Death" Benefit in the following schedule for that option.

**H, J, K and L Option Schedule**

| Option | Total Limit | Accidental Death Benefit |
|---|---|---|
| H | $50,000 | $10,000 |
| J | $100,000 | $10,000 |
| K | $177,500 | $25,000 |
| L | $277,500 | $25,000 |

We will only pay for expenses or loss incurred within three years from the date of the accident.

**Definitions**

A. With respect to all First Party Benefits Coverage: "The act" means the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended.

In addition, the following words and phrases are defined for all First Party Benefits Coverage.

B. "Accidental death" means the death of you or any "resident relative" from "bodily injury" caused by accident, if the death occurs within 24 months from the date of the accident.

C. "Bodily injury" means accidental bodily harm to an "insured" and that "insured's" resulting illness, disease or death.

D. "Funeral expense" means reasonable expenses incurred for, and directly related to, the funeral, burial, cremation or other form of disposition of the remains of the deceased "insured". The expenses must be incurred as a result of the death of the "insured" and within 24 months from the date of the accident.

E. "Income loss" means eighty (80%) percent of gross income actually lost by an "insured". "Income loss" also means reasonable expenses actually incurred for hiring:
1. A substitute to perform the work a self-employed "insured" would have performed except for "bodily injury", or
2. Special help, thereby enabling an "insured" to work, thereby reducing loss of gross income.
"Income loss" does not include:
1. Loss of expected income for any period following the death of an "insured";
2. Expenses incurred for services performed following the death of an "insured"; or
3. Any loss of income during the first five (5) working days the "insured" did not work after the accident because of the "bodily injury".

F. "Insured" means:
1. You or any "resident relative";
2. Any other person:
   a. While "occupying" "your covered auto"; or
   b. While a pedestrian if injured as a result of an accident in Pennsylvania involving "your covered auto".
If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

G. "Medical expenses" means reasonable and necessary charges incurred for:
1. Medical treatment, including but not limited to:
   a. Medical, hospital, surgical, nursing and dental services;
   b. Medications, medical supplies and prosthetic devices; and
   c. Ambulance;
2. Medical and rehabilitative services, including but not limited to:
   a. Medical care;
   b. Licensed physical therapy, vocational rehabilitation and occupational therapy;
   c. Osteopathic, chiropractic, psychiatric and psychological services; and
   d. Optometric services, speech pathology and audiology;
3. Non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Payment of "medical expenses" incurred after 18 months from the date of the accident causing "bodily injury" shall be made only if within 18 months from the date of the accident, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

H. "Motor vehicle" means a self-propelled vehicle, operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:
1. By muscular power; or
2. On rails or tracks.

I. "Named insured" means the person or organization named in Item 1 in the Declarations.

J. "Your covered auto" means a "motor vehicle":
1. To which liability coverage under this policy applies and for which a specific premium is charged; and
2. For which you maintain First Party Benefits Coverage as required under "the act".

**Exclusions**

We do not provide benefits for "bodily injury":
1. Sustained by any "insured" while intentionally causing or attempting to cause "bodily injury" to:
   a. Himself;
   b. Herself; or
   c. Any other person.
2. Sustained by any "insured" while committing a felony.
3. Sustained by any "insured" while seeking to elude lawful apprehension or arrest by a law enforcement official.
4. Sustained by any "insured" while maintaining or using a "motor vehicle" knowingly converted by that "insured". However, this exclusion (4.) does not apply to:
   a. You; or
   b. Any "resident relative".
5. Sustained by any "insured" who, at the time of the accident:
   a. Is the owner of one or more registered "motor vehicles" and none of those "motor vehicles" have in effect the financial responsibility required by "the act", or
   b. Is "occupying" a "motor vehicle" owned by that "insured" for which the financial responsibility required by "the act" is not in effect.

6. Sustained by any "insured" maintaining or using a "motor vehicle" while located for use as a residence or premises.
7. Sustained by any "insured" injured as a result of conduct within the course of the business of repairing, servicing or otherwise maintaining "motor vehicles". This exclusion (7.) does not apply if the conduct is off the business premises.
8. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (8.) does not apply to:
   a. You; or
   b. Any "resident relative".
9. Sustained by any "insured" while "occupying":
   a. A recreational vehicle designed for use off public roads; or
   b. A motorcycle, moped or similar-type vehicle.
10. Sustained by any "insured" while "occupying" or when struck by "your covered auto" registered with a transportation network company that uses a digital network or software application service to connect its customers to transportation services provided by transportation network company drivers, and the driver is logged into the network or application as a driver, regardless of whether the driver has accepted a passenger or delivery assignment.
11. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.
12. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. Nuclear reaction;
   b. Radiation; or
   c. Radioactive contamination.

**Limit Of Liability**

A. The Limit of Liability for all the First Party Benefits that apply is the most we will pay to or for each "insured" as the result of any one accident. This is the most we will pay regardless of the number of:
1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing First Party Benefits.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

B.  If combination First Party Benefits are afforded, we will apply the total limit of liability to provide any separate limits required by "the act" for all First Party Benefits. This provision will not change our total limit of liability.

C.  Any amount payable under all First Party Benefits Coverage shall be excess over any amounts paid, payable or required to be provided to an "insured" under any workers' compensation law or similar law.

D.  The amount we will pay to a person or institution providing treatment, accommodation, products or services to an "insured" for an injury covered by benefits for "medical expenses" shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

**Priorities Of Policies**

We will pay all First Party Benefits in accordance with the order of priorities set forth by "the act". We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category listed below is the lowest level of priority. The priority order is:

| First: | The insurer providing benefits to the "insured" as a "named insured". | |
|---|---|---|
| Second: | The insurer providing benefits to the "insured" as a "resident relative" who is not a "named insured" under another policy providing coverage under "the act". | |
| Third: | The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident. | |
| Fourth: | The insurer providing benefits on any "motor vehicle" involved in   the accident if the "insured" is: | |
| | a. | a pedestrian; and |
| | b. | not provided first party benefits under any other automobile policy. |
| | In   this priority, an unoccupied parked   "motor vehicle" is not a "motor vehicle"  involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury. | |

If 2 or more policies have equal priority within the highest applicable priority level:

1.  The insurer against which the claim is first made shall process and pay the claim, up to its limit of liability, as if wholly responsible subject to subsequent contribution pro rata from any other insurer for the benefits paid and the cost of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

2.  The maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

**Non-Duplication Of Benefits**

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance including self-insurance.

**Payment Of Accidental Death Benefits**

The "accidental death" benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1.  The deceased "insured's" surviving spouse; or

2.  If there is no surviving spouse, the deceased "insured's" children; or

3.  If there is no surviving spouse or surviving children, to the deceased "insured's" estate.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D01PA02 (08-17)

# UNINSURED MOTORISTS COVERAGE AND
## UNDERINSURED MOTORISTS COVERAGE SECTION

**UNINSURED MOTORISTS COVERAGE**
**Coverage D6 – Uninsured Motorists Bodily Injury Stacked**
**Coverage D7 – Uninsured Motorists Bodily Injury Non-Stacked**

**UNDERINSURED MOTORISTS COVERAGE**
**Coverage D8 – Underinsured Motorists Bodily Injury Stacked**
**Coverage D9 – Underinsured Motorists Bodily Injury Non-Stacked**

**Insuring Agreement**

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of either an "uninsured motor vehicle" or an "underinsured motor vehicle" where such coverage is indicated as applicable in the Declarations, because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or the "underinsured motor vehicle".
We will pay under Underinsured Motorists Coverage only if 1. or 2. below applies:
1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", subject to our consent to settle, and we:
   a. Have been given prompt written notice of such tentative settlement; and
   b. Either advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification or we give written consent to the tentative settlement.
No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

A. "Insured" as used in this Coverage Section means:
1. You or any "resident relative".
2. Any other person "occupying" "your covered auto" if the occupancy is (or is reasonably believed to be) with your permission.
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
B. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not mean an "uninsured motor vehicle" and does not include any vehicle or equipment:
1. For which liability coverage is provided under Coverage A of this policy.
2. Operated on rails or crawler treads.
3. Designed mainly for use off public roads while not on public roads.
4. While located for use as a residence or premises.
C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   a. You or any "resident relative";
   b. A vehicle which you or any "resident relative" are "occupying"; or
   c. "Your covered auto".
   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) insolvent; or
      (2) involved in insolvency proceedings.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

However, "uninsured motor vehicle" does not mean an "underinsured motor vehicle" and does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "resident relative".
2. Owned or operated by a self-insurer within the meaning of any applicable motor vehicle law except a self-insurer which is or becomes insolvent.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

## Exclusions

A. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":
1. If that "insured" or the legal representative settles the "bodily injury" claim without our written consent. However, this exclusion (A.1.) does not apply if such settlement does not adversely affect our rights.

B. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by you or any "resident relative" while "occupying" or when struck by any motor vehicle that you or any "resident relative" owns; or that is furnished or available for your or any "resident relative's" regular use, which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

C. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":
1. While "occupying" "your covered auto" when it is being used, or during the period of time it is available for hire, as a public or livery conveyance. This Exclusion (C.1.) applies whether or not there is:
   a. A passenger "occupying" the vehicle; or
   b. Property being transported for a fee in or upon the vehicle.
   This exclusion (C.1.) does not apply to a vehicle used for a:
   a. Share-the-expense car pool;
   b. Charitable purpose; or
   c. Volunteer purpose.
2. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This exclusion (C.2.) does not apply to a "resident relative" using "your covered auto" which is owned by you.

3. While "occupying" "your covered auto" during a period it is rented or leased by you to others. However, this exclusion (C.3.) does not apply to you or a "resident relative"

D. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "non-economic loss" sustained by any "insured" to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle" or an "underinsured motor vehicle" unless the "bodily injury" sustained is a "serious injury".
This exclusion (D.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

E. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits law or similar law except a workers' compensation law.

F. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for punitive or exemplary damages including legal costs related thereto.

## Limit Of Liability

### Coverage D6 – Uninsured Motorists Bodily Injury Stacked

A. Except as provided in paragraph C:
If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations for Coverage D6:
1. The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.
2. Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:
If a single limit of liability for "bodily injury" liability is shown in the Declarations for Coverage D6, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "uninsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations for Coverage D6; or

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

4.   Vehicles involved in the accident.

However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "resident relative" is the sum of the applicable limits for all vehicles shown in the Declarations for Coverage D6. For any "insured" other than you or any "resident relative", our maximum limit of liability is the limit applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1.   "Insureds";
2.   Claims made;
3.   Vehicles or premiums shown in the Declarations for Coverage D6; or
4.   Vehicles involved in the accident.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 and:

1.   Coverage A or Coverage D8 or Coverage D9 of this policy; or
2.   Any other personal auto policy issued to you by us or any of our affiliates.

E.  We will not make a duplicate payment under Coverage D6 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G.  The limit of liability under Coverage D6 is reduced by any amount paid to the same "insured" for the same accident under Coverage A.

**Coverage D7 – Uninsured Motorists Bodily Injury Non-Stacked**

A.  Except as provided in paragraph C:
If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations for Coverage D7:

1.   The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.
2.   Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B.  Except as provided in paragraph C:
If a single limit of liability for "bodily injury" liability is shown in the Declarations for Coverage D7, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C.  With respect to damages caused by the owner or operator of an "uninsured motor vehicle" the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1.   "Insureds";
2.   Claims made;
3.   Vehicles or premiums shown in the Declarations for Coverage D7; or
4.   Vehicles involved in the accident.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D7 and:

1.   Coverage A or Coverage D8 or Coverage D9 of this policy; or
2.   Any other personal auto policy issued to you by us or any of our affiliates.

E.  We will not make a duplicate payment under Coverage D7 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G.  The limit of liability under Coverage D7 is reduced by any amount paid to the same "insured" for the same accident under Coverage A.

**Coverage D8 – Underinsured Motorists Bodily Injury Stacked**

A.  Except as provided in paragraph C:
If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations for Coverage D8:

1.   The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.
2.   Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D01PA02 (08-17)

B. Except as provided in paragraph C:
If a single limit of liability for "bodily injury" liability is shown in the Declarations for Coverage D8, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "underinsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:
1.  "Insureds";
2.  Claims made;
3.  Vehicles or premiums shown in the Declarations for Coverage D8; or
4.  Vehicles involved in the accident.

However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "resident relative" is the sum of the applicable limits for all vehicles shown in the Declarations for Coverage D8. For any "insured" other than you or any "resident relative", our maximum limit of liability is the limit applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:
1.  "Insureds";
2.  Claims made;
3.  Vehicles or premiums shown in the Declarations for Coverage D8; or
4.  Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D8 and:
1.  Coverage A or Coverage D6 or Coverage D7 of this policy; or
2.  Any other personal auto policy issued to you by us or any of our affiliates.

E. We will not make a duplicate payment under Coverage D8 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G. The limit of liability under Coverage D8 is reduced by any amount paid to the same "insured" for the same accident under Coverage A.

**Coverage D9 – Underinsured Motorists Bodily Injury Non-Stacked**

A. Except as provided in paragraph C:

If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations for Coverage D9:
1.  The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.
2.  Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:
If a single limit of liability for "bodily injury" liability is shown in the Declarations for Coverage D9, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "underinsured motor vehicle" the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:
1.  "Insureds";
2.  Claims made;
3.  Vehicles or premiums shown in the Declarations for Coverage D9; or
4.  Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D9 and:
1.  Coverage A or Coverage D6 or Coverage D7 of this policy; or
2.  Any other personal auto policy issued to you by us or any of our affiliates.

E. We will not make a duplicate payment under Coverage D9 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G. The limit of liability under Coverage D9 is reduced by any amount paid to the same "insured" for the same accident under Coverage A.

**Other Insurance**

If there is other applicable similar insurance available under more than one policy or provision of coverage, the following priorities of recovery apply:

First    The Uninsured Motorists Coverage or Underinsured Motorists Coverage

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D01PA02 (08-17)

applicable to the vehicle the "Insured" was "occupying" at the time of the accident.

**Second** The policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the "insured" as a "named insured" or "resident relative".

1. Under Coverage D7 or D9, when there is applicable insurance available under the First priority:
   a. The limit of liability applicable to the vehicle the "insured" was "occupying" under the policy in the First priority, shall first be exhausted; and
   b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for any one vehicle under any one policy providing coverage to you or any "resident relative"

2. Under Coverage D7 or D9, when there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

## Arbitration

A. If we and an "insured" do not agree:
   1. Whether the owner or operator of the "uninsured motor vehicle" or "underinsured motor vehicle" is legally liable to that "insured" for "bodily injury" sustained and caused by an accident; or
   2. The amount of the damages sustained by the "insured";

Either party may make a written demand for arbitration.

Issues or questions seeking to interpret language of this policy or to determine whether or how coverage applies to an "insured" may not be arbitrated. Those issues and questions may not be part of any submission to the panel of arbitrators. This includes, but is not limited to, any issue or questions on:
   1. Any person's status as an "insured";
   2. The stacking of coverages or the amount of coverage available;

3. The sufficiency of the coverage election made for this policy or any other coverage election made, or claimed to have been made, by any person;
4. The residency or domicile of any person, including any person claiming to be an "insured";
5. The applicability of a statute of limitations;
6. Our rights and duties;
7. Any "insured's" rights and duties under this policy;
8. The interpretation of defined terms, the insuring agreement, exclusions, the limits of liability, this arbitration clause, or any other of the policy's terms and conditions; or
9. The degree to which either party is bound by a decision made by an arbitration panel which a party claims is outside the scope of the arbitration.

B. In the event that a valid written demand for arbitration is made, each party will select an arbitrator who, at the time of the accident, maintained their principle place of business in the county in which the arbitration is to be conducted. However, a party may select an arbitrator from outside that county if the other party consents to such a selection. The two arbitrators will select a third arbitrator who, at the time of the accident, maintained their principal place of business in the county in which the arbitration is to be conducted. However, the two arbitrators may select an arbitrator from outside that county if the two arbitrators both consent to such a selection. If the two arbitrators cannot agree on the third arbitrator within thirty (30) days, of the valid written demand for arbitration, either party may request a court in the county where the arbitration is to be conducted to make the selection, and such arbitrator must have maintained their principal place of business in the county where the arbitration is to be conducted, unless the two arbitrators selected by the parties agree otherwise.

C. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear equally the reasonable expenses of the third arbitrator.

D. Unless agreed otherwise, arbitration will be conducted in the county in which the "insured" lived at the time of the accident. A decision of the arbitrators will be binding as to:
   1. Whether the owner or operator of the "uninsured motor vehicle" or "underinsured motor vehicle" is legally liable to that "insured" for "bodily injury" sustained and caused by an accident; or
   2. The amount of the damages sustained by the "insured".

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

D01PA02 (08-17)

A decision shall not be binding with respect to any issue not properly the subject of arbitration.

Either party may stay arbitration pending final resolution of whether an issue is properly subject to arbitration. The execution of any judgment or award may also be stayed until final resolution is reached on whether an issue was properly the subject of arbitration.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

P01PA02 (11-16)

# DAMAGE TO YOUR AUTO COVERAGE SECTION
## Coverage E – Collision
## Coverage F – Comprehensive
## Coverage G – Custom Equipment - Increased Limit

**INSURING AGREEMENT**
**Coverage E – Collision**
**Coverage F – Comprehensive**

A.  We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss caused by:
1.  "Collision" only if the Declarations indicates that Coverage E – Collision is provided for that auto. Under this coverage, we will not pay for losses that are covered under Coverage F – Comprehensive.
2.  "Comprehensive" only if the Declarations indicates that Coverage F – Comprehensive is provided for that auto.

If losses to more than one "your covered auto" result from the same "collision", only one deductible amount will apply. If the deductible amount differs for each auto involved in the accident, then only the highest deductible will apply.

We will not subtract any deductible for the amount we will pay for a loss to:
1.  Any "non-owned auto" caused by "collision" or "comprehensive".
2.  "Your covered auto" caused by "collision" with a vehicle not owned by you or a "resident relative" but insured by us or any of our affiliated companies under a personal auto policy.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B.  As used in this Coverage Section:
1.  "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.
2.  "Comprehensive" means loss to "your covered auto" or a "non-owned auto" not caused by "collision". Losses caused by the following are not "collision" losses but are "comprehensive" losses:
    a.  Missiles or falling objects;
    b.  Fire;
    c.  Theft or larceny;
    d.  Explosion or earthquake;
    e.  Windstorm;
    f.  Hail, water or flood;
    g.  Malicious mischief or vandalism;
    h.  Riot or civil commotion;
    i.  Contact with bird or animal; or
    j.  Breakage of glass.
    If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".
3.  "Custom equipment" means any permanently attached or installed:
    a.  Furnishings, mechanical or electrical parts, equipment, devices, accessories, murals, graphics, non-standard paint, enhancements or changes that alter the appearance or performance of any private passenger auto, sport utility vehicle, pickup or van; or
    b.  Electronic equipment used in any private passenger auto, sport utility vehicle, pickup or van that reproduces, receives or transmits audio, visual or data signals.
    "Custom equipment" does not include:
    a.  Vehicle options offered by the original manufacturer specifically for that vehicle model and model year, whether that option is installed with original or non-original parts of like kind and quality;
    b.  Equipment installed to make a vehicle handicap accessible; or
    c.  A cap, cover or bedliner in or upon a pickup.
4.  "Fungi" means any type or form of fungus, including mold or mildew, and any of the following that are produced or released by "fungi":
    a.  Mycotoxins;
    b.  Spores;
    c.  Scents; or
    d.  By-products.
5.  "Non-owned auto" means:
    a.  Any private passenger auto, sport utility vehicle, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "resident relative" while in the custody of or being operated by you or any "resident relative"; or
    b.  Any private passenger auto, sport utility vehicle, pickup, van or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
        (1) Breakdown;
        (2) Repair;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(3) Servicing;
(4) Loss;
(5) Destruction; or
(6) Being inspected or transported by a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act.

## ADDITIONAL COVERAGES

Provided there is Coverage E – Collision or Coverage F – Comprehensive, as shown in the Declarations for "your covered auto" the following coverages apply.

### A. Airbag Replacement

Under Coverage F – Comprehensive we will pay to replace or reset an airbag that inflates due to malfunction in "your covered auto". This additional coverage does not apply to a "non-owned auto".

We will only make payment under this additional coverage to the extent the malfunction is not covered by warranty, other service agreement, or any other product recall.

Exclusion 2. of this Coverage Section does not apply to this additional coverage.

No deductible applies to this additional coverage.

### B. Child Safety Seat

In the event of a Coverage E – Collision or Coverage F – Comprehensive covered loss where we determine that a child safety seat's integrity is compromised, we will pay up to $500 to replace with like kind and quality the child safety seat, provided it was in "your covered auto" or a "non-owned auto" at the time of the covered loss.

If a covered loss occurs when the child safety seat is in a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

No deductible applies to this additional coverage.

### C. Custom Equipment

We will pay up to $1,500 for "custom equipment" and any related labor and installation costs as part of a Coverage E – Collision or Coverage F – Comprehensive covered loss. Regardless of the amount of "custom equipment" installed on "your covered auto" or a "non-owned auto", this limit is

the most we will pay for all damage and any related labor and installation costs for any one covered loss.

If there is a covered loss to "custom equipment" on a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

Exclusion 4. does not apply to the extent coverage is provided under this additional coverage.

This additional coverage is subject to your deductibles.

### D. Transportation Expenses

Under Coverage F – Comprehensive we will pay for:
1. Reasonable transportation expenses incurred by you in the event of the total theft of "your covered auto"; or
2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto".

We will pay up to $30 per day, to a maximum of $900. These limits are the most we will pay for transportation expenses and loss of use expenses.

We will pay only those expenses incurred during the period:
1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" or the "non-owned auto" is returned to use, or we offer to pay for its loss.

No deductible applies to this additional coverage.

## OPTIONAL COVERAGE

### Coverage G – Custom Equipment - Increased Limit

If Coverage G – Custom Equipment - Increased Limit is shown in the Declarations for a specific "your covered auto", ADDITIONAL COVERAGE – Custom Equipment is amended for that "your covered auto" as follows:
The limit shown in the Declarations replaces the $1,500 limit for "custom equipment".

All other provisions and limitations applicable to ADDITIONAL COVERAGE – Custom Equipment apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

P01PA02 (11-16)

**EXCLUSIONS**

The following exclusions apply to this DAMAGE TO YOUR AUTO COVERAGE SECTION. We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used, or during the period of time it is available for hire, as a public or livery conveyance. This Exclusion (1.) applies whether or not there is:
   a. A passenger "occupying" the vehicle; or
   b. Property being transported for a fee in or upon the vehicle.
   This Exclusion (1.) does not apply to a vehicle used for a:
   a. Share-the-expense car pool;
   b. Charitable purpose; or
   c. Volunteer purpose.

2. Damage due and confined to:
   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure; or
   d. Road damage to tires.
   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:
   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.

4. Loss to "custom equipment".

5. Loss to any electronic equipment that reproduces, receives, or transmits audio, visual or data signals. This includes:
   a. Radios and stereos;
   b. Tape decks;
   c. Compact disk systems;
   d. Navigation systems;
   e. Internet access systems;
   f. Personal computers;
   g. Video entertainment systems;
   h. Telephones;
   i. Televisions;
   j. Two-way mobile radios;
   k. Scanners; or
   l. Citizens band radios.
   This Exclusion (5.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

6. Loss to tapes, discs, chips, memory cards or any other removable media used to store audio, visual or other data. We also will not pay for loss of

or reconstruction of data contained in such devices.

7. Loss to equipment used for the detection or location of, or interference with, speed measuring devices.

8. Loss due to actual or perceived loss in market value or resale value.

9. Loss to "your covered auto" or any "non-owned auto" due to confiscation by governmental or civil authorities. This Exclusion (9.) does not apply to the interests of any loss payee shown in the Declarations for that "your covered auto".

10. Loss to "your covered auto" or any "non-owned auto" which occurs while participating or competing in, or practicing or preparing for any prearranged or organized:
    a. Racing contest, meet or rally, whether against another vehicle or against time;
    b. Demolition contest;
    c. Stunting activity; or
    d. High performance driving or racing instruction course or school.
    This Exclusion (10.) applies only while the vehicle is at a location, whether temporary or permanent, established for any of the above purposes.

11. Loss to any "non-owned auto" when used by you or any "resident relative" without a reasonable belief that you or that "resident relative" are entitled to do so.

12. Loss to any "non-owned auto" while being maintained or used by any person while employed or otherwise engaged in the "business" of:
    a. Selling;
    b. Repairing;
    c. Servicing;
    d. Storing; or
    e. Parking;
    vehicles designed for use on public highways. This includes road testing and delivery.

13. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in a "business" not described in Exclusion 12. This Exclusion (13.) does not apply to the maintenance or use by you or any "resident relative" of a "non-owned auto" which is a private passenger auto, sport utility vehicle or "trailer".

14. Loss to:
    a. A "trailer", camper body or motor home which is not shown in the Declarations; or
    b. Facilities or equipment used with any "trailer", camper body or motor home. Facilities or equipment include but are not limited to:
       (1) Cooking, dining, plumbing or refrigeration facilities;
       (2) Awnings or cabanas; or
       (3) Any other facilities or equipment used with a "trailer", camper body or motor home.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

P01PA02 (11-16)

This Exclusion (14.) does not apply to:
a. A "trailer", and its facilities or equipment, that you do not own; or
b. A "trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, that you:
(1) Acquire during the policy period; and
(2) Ask us to insure within 30 days after you become the owner.
15. Loss to "your covered auto" during a period it is rented or leased by you to others. However, this Exclusion (15.) does not apply to the operation of "your covered auto" by you or a "resident relative".
16. Loss to, or loss of use of, a "non-owned auto" rented to:
a. You; or
b. Any "resident relative";
if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "resident relative", pursuant to the provisions of any applicable rental agreement or state law.
17. Loss to "your covered auto" or any "non-owned auto" arising out of the actual, alleged or threatened presence, growth or proliferation or spread of "fungi", or for any testing or remediation of "fungi". This Exclusion (17.) does not apply if the "fungi" are the direct result of a loss payable under either Coverage E – Collision or Coverage F – Comprehensive, and such coverage is provided under this policy.
18. The cost to re-code or replace locks in the event a key or electronic control pad associated with such locks is lost or stolen.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:
1. Actual cash value of the stolen or damaged property at the time of loss. An adjustment for depreciation and physical condition will be made in determining actual cash value; or
2. Amount necessary to repair or replace stolen or damaged parts or equipment of the functionally equivalent design and material necessary to restore the vehicle to its pre-loss physical condition at the time of loss. If we pay to replace a part or parts, we have the option to pay for new, used, reconditioned or remanufactured:
a. Original equipment manufacturer replacement parts or equipment; or
b. Non-original equipment manufacturer replacement parts or equipment.
However, the most we will pay for loss to any "non-owned auto" which is a "trailer", including its facilities and equipment, is $2,000.

B. If a repair or replacement results in better than like kind and quality, we will not pay for the amount of the betterment.
C. No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage Section and:
1. Any other Coverage Section or part of this policy; or
2. Any other personal auto policy issued to you by us or any of our affiliates.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:
1. You; or
2. The address shown in this policy.
If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.
If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

Subject to the Loss Payable Clause, we may, at our option, make payment to one or more of the following:
1. You;
2. The owner; or
3. On your behalf, the repairer.

**NO BENEFIT TO BAILEE**

This insurance will not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss to "your covered auto", we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, any insurance we provide with respect to a "non-owned auto" will be excess over any other collectible sources of recovery including, but not limited to:
1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.
However, any insurance we provide for a "non-owned auto" while used as a temporary substitute for "your covered auto" that is provided by a motor vehicle dealer, as defined in the Pennsylvania Board of Vehicles Act, shall be primary.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## APPRAISAL

A.  If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser within 20 days after receiving the written request from the other. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
   1.  Pay its chosen appraiser; and
   2.  Bear the expenses of the appraisal and umpire equally.
B.  We do not waive any of our rights under this policy by agreeing to an appraisal.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

E1CCW02 (10-13)

## ADDITIONAL INSURED

**All provisions of the policy apply unless modified by this endorsement.**

Any liability and any required no-fault coverages afforded by this policy for the auto shown in the Declarations also apply to the person or organization named as an additional insured for that auto.

1. We will pay damages for which that person or organization becomes legally responsible only if the damages arise out of acts or omissions of:
   a. You or any "resident relative"; or
   b. Any other person using the auto shown in the Declarations, except the lessor or any employee or agent of the lessor using "your leased auto".
2. "Your leased auto" means:

   a. An auto shown in the Declarations which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and
   b. Any substitute or replacement auto furnished by the lessor named in the Declarations.
3. If we terminate this policy, notice will also be mailed to the additional insured.
4. The additional insured is not responsible for payment of premium.
5. The designation of an additional insured will not operate to increase our limits of liability.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

E1DPA00 (10-13)

# NAMED DRIVER EXCLUSION ENDORSEMENT

**Named Insured:**
MARTIN BURKE

**Agency Code:**
0CLK86

**Policy Number:**
602495581 203 1

**Agency Name:**
A M SKIER AGENCY INC

**Effective Date:**
06/03/2018

**Effective (At 12:01 A.M. Standard Time)**

**The provisions of the policy apply unless modified by this endorsement.**

**Name of "Named Excluded Driver(s)":**

DEVON SULLIVAN _____    _____ is a "named excluded driver".

The provisions of this endorsement apply with respect to the "named excluded driver(s)" shown above or in the Declarations.

**Definition**

The following definition is added to the General Provisions Section of the policy:

"Named excluded driver" means a person who is shown in this endorsement and in the Declarations as a "named excluded driver" and who is excluded from all coverages under the policy.

If more than one "named excluded driver" is shown, then the provisions of this exclusion will apply separately and individually to each "named excluded driver".

**Named Driver Exclusion**

With respect to all coverages under this policy, we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the "named excluded driver" whether or not such maintenance or use was with the expressed or implied permission of an "insured".

This endorsement is added to the policy:

☐ at my request because the excluded person is insured on another policy of motor vehicle liability insurance.

☐ in accordance with the Act of June 5, 1968 (P.L. 140, No. 78) relating to the writing, cancellation of, or refusal to renew policies of automobile insurance.

Accepted by _____  Signature on file _____ / _____
                                Signature of Named Insured              Date

Accepted by _____  Signature on file _____ / _____
                                Signature of Named Insured              Date

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

E1DPA00 (10-13)

## NAMED DRIVER EXCLUSION ENDORSEMENT

**Named Insured:**
MARTIN BURKE

**Agency Code:**
0CLK86

**Policy Number:**
602495581 203 1

**Agency Name:**
A M SKIER AGENCY INC

**Effective Date:**
06/03/2018

**Effective (At 12:01 A.M. Standard Time)**

### The provisions of the policy apply unless modified by this endorsement.

**Name of "Named Excluded Driver(s)":**

ZAKARY BURKE _____ is a "named excluded driver".

The provisions of this endorsement apply with respect to the "named excluded driver(s)" shown above or in the Declarations.

**Definition**

The following definition is added to the General Provisions Section of the policy:

"Named excluded driver" means a person who is shown in this endorsement and in the Declarations as a "named excluded driver" and who is excluded from all coverages under the policy.

If more than one "named excluded driver" is shown, then the provisions of this exclusion will apply separately and individually to each "named excluded driver".

**Named Driver Exclusion**

With respect to all coverages under this policy, we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the "named excluded driver" whether or not such maintenance or use was with the expressed or implied permission of an "insured".

This endorsement is added to the policy:

☐ at my request because the excluded person is insured on another policy of motor vehicle liability insurance.

☐ in accordance with the Act of June 5, 1968 (P.L. 140, No. 78) relating to the writing, cancellation of, or refusal to renew policies of automobile insurance.

Accepted by _____  Signature on file _____ / _____
                         Signature of Named Insured            Date

Accepted by _____  Signature on file _____ / _____
                         Signature of Named Insured            Date

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

E1ZPA00 (10-13)

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**LIMITED BENEFITS**

THIS ENDORSEMENT PROVIDES COVERAGE ONLY FOR "MEDICAL EXPENSES".

**WARNING**

YOU SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO "MEDICAL EXPENSES" INCURRED BY ANY "INSURED". YOU CAN AVOID HAVING TO PAY SOME OF YOUR OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A MEDICAL EXPENSE BENEFIT LIMIT OF $100,000.

This endorsement is subject to all of the provisions of the First Party Benefits Coverage Section except as modified herein:

**Coverage W – Extraordinary Medical Benefits Coverage**

**Insuring Agreement**

Regardless of which First Party Benefit Option you have purchased under the First Party Benefits Coverage (Coverage QA, Coverage QB or Coverage R), if Coverage W appears in the Declarations, the following provision applies:
We will pay benefits for "medical expenses" in accordance with "the act" to or for an "insured" who sustains "bodily injury" caused by an accident arising out of the maintenance or use of a "motor vehicle" subject to the terms of this endorsement. Regardless of whether you have purchased Coverage QA, Coverage QB or Coverage R under this policy, we will pay Extraordinary Medical Benefits Coverage only after $100,000 of "medical expenses" resulting from any one accident has been incurred by the "insured" seeking Extraordinary Medical Benefits.

**Exclusions**

The exclusions in the First Party Benefits Coverage Section apply to this endorsement. The following exclusion is added, and applies only to Extraordinary Medical Benefits Coverage:
We do not provide benefits for "bodily injury" under this endorsement for the first $100,000 of "medical expenses" incurred by an "insured" as a result of any accident.

**Limit Of Liability**

Regardless of whether you have purchased Coverage QA, Coverage QB or Coverage R under this policy, the limit of liability provision in the First Party Benefits Coverage is deleted for this endorsement and replaced by the following, to apply only to Extraordinary Medical Benefits Coverage:

1. The most we will pay for "bodily injury" to any one "insured" as the result of any one accident for Extraordinary Medical Benefits Coverage is $1,000,000. This is the most we will pay for "medical expenses" to or for each "insured" as the result of any one accident, subject to an annual limit of $50,000 for each "insured". However, the annual limit of $50,000 for each "insured" does not apply to "medical expenses" incurred within 18 months from the date the "insured" incurs $100,000 of medical expense as a result of the accident. This is the most we will pay regardless of the number of:
   a. claims made;
   b. vehicles or premiums shown in the Declarations;
   c. vehicles involved in the accident; or
   d. insurers providing Extraordinary Medical Benefits Coverage.
2. Any amounts payable under this endorsement shall be excess over any amounts available to an "insured" for "medical expenses" under Coverage QA, Coverage QB or Coverage R provided in accordance with "the act".
3. Any amount payable under Extraordinary Medical Benefits Coverage shall be excess over any amount paid, payable or required to be provided to an "insured" under any workers' compensation law or similar law.

**Conditions**

The Conditions Section in the First Party Benefits Coverage Section apply to this endorsement. The following paragraphs are added and apply only to Extraordinary Medical Benefits Coverage:
A person seeking Extraordinary Medical Benefits Coverage must also submit proof, when required by us, that at least $100,000 in "medical expenses" has been incurred by an "insured" seeking coverage under this endorsement as a result of any one accident.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

E1ZPA00 (10-13)

Structured settlements: Where it appears that payment of benefits for "medical expenses" in the form of a structured settlement will be both cost-effective to us and in the best interest of an "insured", we and any "insured" may make an agreement which is mutually satisfactory as respects timing and amounts of payments under Extraordinary Medical Benefits Coverage. This may include annuities or other long-term payment arrangement.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# PRIVACY NOTICE

## Privacy Statement for Individual U.S. Personal Insurance Consumers

Your privacy is important to us. When we quote or sell an insurance policy to a person, we get information about the people and property that we're insuring. This Privacy Notice describes the types of information about you ("personal information") we collect, where we get it, and how we use, share and protect it. It applies to current and former Travelers personal insurance customers in the United States.

A few key points include:

- We collect personal information from you, your agent, and from third parties
- We will not share your personal information with others for their marketing purposes without your permission
- We maintain safeguards designed to help prevent unauthorized use, access and disclosure of personal information

| What type of information do we collect? | You give us most of what we need in the application process. To make sure what we have is correct, or to obtain additional information, we may need to check back with you. For example, you may be asked to give us more details in writing, via e-mail or over the phone. In addition, we may obtain other information, including but not limited to the following: |
|---|---|
| | • Information from consumer reporting agencies and other insurance support organizations to the extent permitted by law. This may include items such as credit history, credit-based insurance score, driving record, accident and motor vehicle conviction history, and claim history. Information given to us by an insurance support organization, including consumer reporting agencies, may be retained by them and disclosed to others. |
| | • Your past insurance history, including information about your policies and claims, from insurance support organizations or your former insurers. |
| | • Information regarding your property. We may obtain this through third party reports and through a property inspection. We or an independent inspector may visit the property to inspect its condition, or we may use an unmanned aircraft system. We may obtain geospatial information, and take pictures or video. If we need more details about the property, we may need to schedule an interior inspection. |
| | • Information from government agencies or independent reporting companies. |
| | • Other third party data relating to the insured risk, such as possible drivers and vehicles associated with your household and odometer readings associated with any vehicle(s). |
| | • In some instances, we may need to know about your health. For example, if we need to know whether a physical limitation will affect your ability to drive, we may ask for a statement from your doctor. |

| How do we use your personal information? | We use the personal information we collect to sell, underwrite and rate, service and administer insurance; to handle claims; to create and market products and services; to prevent and detect fraud; to satisfy legal or regulatory requirements; and for other business purposes and as otherwise allowed by law. |
|---|---|
| | Once you're insured with us, we will retain details about your policy(ies). This may include, among other things, bill payment, transaction or claim history and details, as well as other information. |
| | When you give us a telephone number, you consent to being contacted at that number, including if the number is for a cell phone or other wireless device. We may contact you in person, by recorded message, by the use of automated dialing equipment, by text (SMS) message, or by any other means your device is capable of receiving, to the extent permitted by law and for reasonable business purposes, including to service your policy or alert you to other relevant information. |
| How do we share your personal information? | We do not give or sell your personal information to nonaffiliated third parties for their own marketing purposes without your prior consent. |
| | We may give the personal information we collect to others to help us conduct, manage or service our business. When we do, we require them to use it only for the reasons we gave it to them. We may give, without your past permission and to the extent permitted by law, personal information about you to certain persons or organizations such as: your agent or insurance representative; our affiliated property and casualty insurance companies; independent claim adjusters or investigators; persons or organizations that conduct research; insurance support organizations (including consumer reporting agencies); third party service providers; another insurer; law enforcement; state insurance departments or other governmental or regulatory agencies; or as otherwise required or permitted by law. Information we share with insurance support organizations, such as your claims history, may be retained by them and disclosed to others. |
| | We may also share your personal information: to comply with legal process; to address suspected fraud or other illegal activities; or to protect our rights, privacy, safety or property, and/or that of you or others. |
| How do we protect your personal information? | We maintain physical, electronic and administrative safeguards designed to help protect personal information. For example, we limit access to personal information and require those who have access to use it only for legitimate business purposes. |

| How can I review and correct the personal information you have about me? | If you have questions about what personal information we maintain about you, please make your request in writing and include your full name, mailing address, phone number and policy number. When we receive your written request, we will respond within thirty (30) business days. We will describe the personal information we maintain, whom we know we've shared it with in the last two (2) years, and how you may request a correction, if necessary. If we requested a consumer report, we will tell you the name and address of the consumer reporting agency. |
|---|---|
| | You may also see and copy the information we have, except for certain documents about claims and lawsuits. If you believe our information is incorrect, let us know in writing. We will review it, and, if we agree, we will correct it, notify you, and send a correction letter to anyone who received the original information. If we do not agree, you are allowed to file a letter with your comments. |
| | For questions about the right of access or correction to your information, please write to: Travelers, One Tower Square, Hartford, CT 06183, Attn: Privacy Office. |

This notice is given by The Travelers Indemnity Company and its personal insurance property casualty affiliates.

This notice may be amended at any time. The most current version will be posted on Travelers.com.

PL-50009 (08-17)                                                                                     Page 3 of 3

## Important Notice about Consumer Reporting

Thank you for trusting us with your insurance. We are committed to providing you excellent service at a competitive price. A lot of information is used to determine your price, including information about your credit and claim history(ies). We are required to tell you that based on the information we received, you did not receive our best rating classification. Your price is competitive and accurate based on your unique characteristics. Please refer to the reverse side of this page for the details from your credit history affecting your price.

The consumer reporting agency(ies) that provided information about you:

Claim History Information:

LexisNexis Consumer Center
P.O. Box 105108
Atlanta, GA 30348-5108
Telephone: 1-800-456-6004
Web Address: www.consumerdisclosure.com

Insurance Score (Credit History) Information:

TransUnion National Disclosure Center
P.O. Box 1000
Chester, PA 19022
Telephone: 1-800-645-1938
Web Address: www.transunion.com

**Remember:**

* You have the right to a free copy of the consumer report(s) listed above.  Simply contact the agency(ies) listed above within 60 days of receipt of this notice.

* You have the right to dispute the accuracy or completeness of any information in a consumer report.  Simply contact the agency to discuss or dispute any information in the report.

* The consumer reporting agency(ies) did not make the pricing determination and cannot answer questions regarding your Travelers policy.

* Notify us if your information changes.  We will reevaluate your situation, which could save you money.

PL-50001 (03-12)

The information from your credit report is used to create an insurance score. Your insurance score was impacted by:

* Number of open revolving accounts.

To learn more about how your credit relates to your insurance policy please contact our Insurance Score Resource Center at 1-800-550-7717. For any other questions, please contact your Travelers agent or representative.

Please note: this information does not necessarily reflect a poor or average credit standing.

PL-50001 (03-12)

## Important Notice about Billing Options and Disclosures

This notice contains important information about our billing options and charges for policy 602495581 203 1.

You have chosen to pay your insurance premium in full and will be billed by mail / email. Other charges that may apply include a $10.00 late charge and a $20.00 fee for payments returned by your bank.

If your billing needs change, you may pay your premium by:

| Bill Plan | Monthly | Pay in Full |
|---|---|---|
| Electronic Funds Transfer (EFT) | $2.00 | No Charge |
| Recurring Credit Card (RCC) | $2.00 | No Charge |
| Bill by Mail / Email | $5.00 | No Charge |

    Late Charge: $10.00 per occurrence
    Payments returned by your bank: $20.00 per occurrence

In the event two payments are returned during a 12 month period you will be required to pay with guaranteed funds for 182 days from the date of the last returned payment. Guaranteed funds are credit card, bank check, money order or home banking payments. Other forms of payment will be returned. You will not be eligible to use our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plans.

Visit www.amp.travelers.com if you would like to enroll in our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plan.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at 1-570-226-4571.

PL-S0019 (11-17)

---

## IMPORTANT NOTICE

---

### Pennsylvania Surcharge Disclosure Statement
### Notice of Tort Options
### Notice of Premium Discounts

**Pennsylvania Surcharge Disclosure Statement:**

In accordance with Pennsylvania law, we are providing you with the circumstances and conditions under which a surcharge would apply, the estimated increase for the surcharge per policy period per policyholder, and the number of years a surcharge would be in effect, if applicable.

Chargeable incidents during the experience period are accumulated for each operator in the household. The experience period* shall be the 36 months immediately preceding the renewal or continuation effective date, as of the preparation of the renewal or continuation.

> * Exception: If a driver is added to the policy subsequent to the policy's original inception date, the experience period for that driver's chargeable incident(s), that occurred prior to the driver being added to the policy, will be the 36 months immediately preceding: the original inception date; or the latest continuation or renewal date, whichever is later.

Chargeable incidents for all drivers on the policy, including accidents involving a permissive user/unlisted driver, are totaled and used to derive a rating factor based upon the total incidents and number of vehicles on the policy. This factor is used in the rating of Bodily Injury, Property Damage, Single Limit Liability, First Party Benefits, increased First Party Benefits, Extraordinary Medical Benefit, Comprehensive and Collision and is applied to each vehicle on the policy.

In addition, once a policy has earned a Safe Driver Discount, chargeable incidents for all drivers on the policy, including accidents involving a permissive user/unlisted driver, are used to determine if the policy remains eligible for the discount at each renewal/continuation. Loss of the discount at renewal can increase the policy premium between 0 and 22%.

**Surcharges are accumulated for Convictions and At Fault accidents as follows:**

**Convictions:**

Surcharges are accumulated for convictions occurring during the experience period for motor vehicle violations of the applicant or any other resident operator. Violations are categorized as outlined below:

**A) Major Convictions for which a surcharge is assigned for each conviction:**

1) Driving under the influence: driving while intoxicated or under the influence of drugs
2) Refusal to take a sobriety test
3) Attempting to elude officer: eluding or attempting to elude a police officer
4) Gross negligence/manslaughter: homicide or assault arising out of the operation of a motor vehicle
5) The accumulation of points under a State Point System or a series of convictions requiring the filing of evidence of Financial Responsibility under any Financial Responsibility Law as of the effective date of the policy
6) Operating a motor vehicle without the owner's permission
7) Reckless driving: driving a motor vehicle in a reckless manner
8) Racing: engaging in a speed contest
9) Suspension/Revocation: suspension or revocation of a license as a result of a conviction unless the suspension is the result of a single 1535 violation
10) Single incident requiring a Financial Responsibility filing

We assess a surcharge of approximately 26% for each major conviction.

**B) Conviction resulting from any other moving traffic violation not assigned a surcharge elsewhere in this rule, and such conviction is the second or subsequent conviction by any one insured recorded under the policy that has not been assigned a surcharge above. These include:**

**1) Intermediate convictions**

> 11-15 miles per hour over the posted speed limit
>
> 16-25 miles per hour over the posted speed limit
>
> Speeding 26 miles per hour over the posted speed limit
>
> Passing violations
>
> Stop Sign/Red Light: Running through a red light or stop sign
>
> Illegal turning
>
> Failure to stop and report an accident when involved in an accident
>
> Careless Driving
>
> Illegal use of license/driving while suspended: driving while license is suspended or revoked; using stolen license
>
> Loan license to unlicensed person
>
> Failure to stop for a school bus: failure to stop or yield for a school bus as required

We assess a surcharge of approximately 8% for each intermediate conviction.

**2) Minor convictions**

> Speeding 1 – 5 miles per hour over the posted speed limit
>
> Speeding 6 – 10 miles per hour over the posted speed limit
>
> Other Miscellaneous Minor violations

We assess a surcharge of approximately 5% for each minor conviction.

**C) At Fault Accidents**

Surcharges shall be assigned for each accident that occurred during the experience period, involving a named insured, any eligible driver in the household, or any permissive user/unlisted driver, while operating an auto.

1) Surcharges are assigned for each auto accident that results in a paid claim for $2,000 or more to property, bodily injury or death.

2) Surcharges are assigned if, during the experience period there were two or more accidents that result in paid claims and the accidents have not been assigned a point under 1) above and the accidents in total resulted in damage to property, bodily injury, or death of $2,000 or more.

We assess a surcharge of approximately 15% for each at fault accident above the threshold and approximately 13% for a combination of minor at fault accidents once they in total pierce the threshold.

**EXCEPTIONS:**

1. No surcharges are assigned for accidents incurred by an operator demonstrated to be a named insured or a principle operator of an auto under a separate policy or permissive user/unlisted driver; and

2. No surcharges are assigned for accidents occurring under the following circumstances:

    a) auto lawfully parked (if the parked vehicle rolls from the parked position then any such accident is charged to the person who parked the auto); or

b) the applicant, owner or other resident operator is reimbursed by, or on behalf of a person who is responsible for the accident or has judgment against such person equal to at least 60% of the total amount of the paid claim; or

c) auto is struck in the rear by another vehicle and the applicant, permissive user/unlisted driver or other resident operator has not been convicted of a moving traffic violation in connection with this accident; or

d) operator of the other auto involved in the accident was convicted of a moving traffic violation and the applicant, permissive user/unlisted driver or resident operator was not convicted of a moving traffic violation in connection with the accident; or

e) auto operated by the applicant, permissive user/unlisted driver or any resident operator is struck by a "hit-and-run" vehicle, if the accident is reported to the proper authorities within 24 hours by the applicant or resident operator; or

f) accidents involving damage by contact with animals or fowl; or

g) accidents involving physical damage, limited to and caused by flying gravel, missiles, or falling objects; or

h) accidents occurring when using auto in response to an emergency if the operator of the auto at the time of the accident was a paid or volunteer member of any police or fire department, first aid squad, or any law enforcement agency. This exception does not include any accident occurring after the auto ceases to be used in response to such emergency; or

i) accidents resulting in an amount being paid on behalf of an insured under a First Party Medical Claim only; or

j) accidents resulting in an amount being paid on behalf of an insured only under Basic, Added or Combination First Party Benefits coverage, or under Extraordinary Medical Benefits coverage.

D) **At Fault Accident With BI:** an accident meets the criteria in C.1) above and there was bodily injury damages paid as a result of the accident.

E) **At Fault Accident Without BI:** an accident meets the criteria in C.1) above but there was no bodily injury damages paid in the accident.

F) If two or more accidents meet the criteria in C. 2) above, we will count the accidents starting with the oldest accident in the experience period. Once the dollars paid or reserved for two or more accidents equal or exceed the threshold, we will use the characteristics of the most recent accident in the group to determine if the accident is an At Fault Accident With BI or an At Fault Accident Without BI and apply the surcharge for the driver involved in that accident. We will then repeat the process for any remaining accidents under the threshold.

G) **Months Since Most Recent Incident:** for each driver the number of months prior to the effective date of the new business policy or continuation that the last at fault accident occurred and the last conviction occurred.

H) **Refund of Surcharged Premium**

If surcharges have been assigned in accordance with one of the following situations, the Company shall refund the insured the increased portion of the premium generated by the point(s). All such refunds shall be the portion of the premium due to the surcharge for all policy periods since the inception of the surcharge.

1) If surcharges are assigned as a result of an accident and it is subsequently learned that the accident falls under one of the exceptions enumerated in this rule.

2) If surcharges are assigned as the result of a conviction and the conviction is ultimately reversed.

3) If surcharges are assigned through mistake, carelessness, misinformation or other error.

**Notice of Tort Options**

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

1) "Limited Tort" Option - This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury", as set forth in the policy or unless one of several other exceptions noted in the policy applies.

2) "Full Tort" Option - This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out of pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

**Notice of Premium Discounts**

If your vehicle is equipped with passive seatbelts or airbags, you are entitled to a discount of the First Party Benefits Coverage portion of your policy. Passive seatbelts are those which automatically fasten without any action by the driver or front seat passenger.

If your vehicle is equipped with a passive anti-theft device you are entitled to a discount on your comprehensive coverage. Passive anti-theft devices are systems installed which are activated automatically when the driver turns the ignition key to the off position. This does not include an ignition interlock provided as a standard feature by the manufacturer.

If all named insureds age 55 or older have successfully completed a driver improvement course approved by PennDOT, you may be eligible for a premium credit.

If you have property insured with us, you may be eligible to receive a premium discount.

Please contact your agent or insurance representative for information on these premium discounts.

# EXHIBIT B

# EXHIBIT B

# CONVENIENCE COLLISION INC.

EXCELLENCE IS............EVERYTHING!
251 ERDMAN AVE., BANGOR, PA 18013
Phone: (610) 599-5056
FAX: (610) 599-5057

Workfile ID:            a990u9c4
PartsShare:             5p9LS7

## Final Bill

### RO Number: 3854

| | | | | |
|---|---|---|---|---|
| Customer: | Insurance: | Adjuster: | Estimator: | Matthew J. |
| Burke, Martin | TRAVELERS | Phone: | Create Date: | 4/24/2019 |
| 2100 Quincy ave | | Claim:     IBG8742001 | | |
| Easton, PA 18045 | | Loss Date:  4/9/2019 | | |
| (484) 239-3008 | | Deductible: | | |

**2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White**

| | | | |
|---|---|---|---|
| VIN:      1GCVKREC3JZ238557 | Interior Color: | Mileage In:   17,039 | Vehicle Out:   5/24/2019 |
| License:  ZDS3462 | Exterior Color:   White | Mileage Out: | |
| State:    PA | Production Date: | Condition: | Job #:        3854 |

| Line | Ver | Operation | Description | Qty | Extended Price $ | Part Type | Labor | Type | Paint |
|---|---|---|---|---|---|---|---|---|---|
| 1 | E01 | | ******Important Notes Read Carefully********** | | | | | | |
| 2 | S01 | Remove/Replace | Estimating Fee (Initial) | 1 | 250.00T | Other | | | |
| | | | NOTE: DAMAGE ANALYSIS REPORT This is the time to write an estimate. This price may vary depending on the extent of the damage. Initial photos are included in this fee (4 corners, VIN, Odometer, LP & Impact) | | | | | | |
| 3 | E01 | Remove/Replace | Pre Scan | 1 | 175.00T | Other | | | |
| | | | NOTE: PRE/POST SCANS is to get vital data from the computer pertinent to the collision & after repairs clearing that information before test driving for safety and confirmation of repairs. | | | | | | |
| 4 | E01 | Remove/Replace | In-Process Scan | 1 | 175.00T | Other | | | |
| | | | NOTE: PRE/POST SCANS is to get vital data from the computer pertinent to the collision & after repairs clearing that information before test driving for safety and confirmation of repairs. | | | | | | |
| 5 | E01 | Remove/Replace | Post Scan | 1 | 175.00T | Other | | | |
| | | | NOTE: PRE/POST SCANS is to get vital data from the computer pertinent to the collision & after repairs clearing that information before test driving for safety and confirmation of repairs. | | | | | | |
| 6 | S01 | Remove/Replace | Research OE Repair Manual/Procedures | 1 | 47.50T | Other | 1.5T | Body | |
| 7 | S01 | Remove/Replace | Photo Documentation | 1 | 175.00T | Other | | | |
| | | | NOTE: Appraiser from Travelers stated he needs photos to be able to pay the policyholder for their loss. This is being requesed of CCI by Mr. Burke's insurance company so they can substantiate the loss therefor this cost must be passed on to client. | | | | | | |
| 8 | E01 | Repair | Prewash | | | | 0.5T | Body | |
| 9 | S01 | Repair | Wash Before Entering Into Booth | | | | 0.5T | Body | |
| 10 | S01 | Repair | Wash Vehicle after Compounding but Before Polish | | | | 0.5T | Body | |
| | | | NOTE: Includes residual compound from edges | | | | | | |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

**Final Bill**

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| 11 | S01 | Repair | Wash and clean Vehicle for Delivery | | | | 2.0T | Body | |
|----|-----|--------|-------------------------------------|---|---|---|------|------|---|
| 12 | S01 | Repair | Inspect for hidden Damage | | | | 1.0T | Body | |
| 13 | S01 | | **FRONT BUMPER** | | | | | | |
| 14 | S01 | Repair | Front bumper w/o park assist, w/fog lamps paint to mtch<br>NOTE: Time is to buff due to match. | | | | | | 0.5T |
| 15 | E01 | | **GRILLE** | | | | | | |
| 16 | E01 | Remove/Install | R&I grille assy | | | | 0.2T | Body | |
| 17 | E01 | | **FRONT LAMPS** | | | | | | |
| 18 | S01 | Remove/Install | RT R&I headlamp assy | | | | 0.3T | Body | |
| 19 | E01 | Remove/Replace | Aim headlamps | | | OEM | 0.5T | Body | |
| 20 | S01 | Remove/Replace | Aim foglamps<br>NOTE: Due to bumper being removed they will need to be aimed. | | | | 0.3T | Body | |
| 21 | E01 | | **RADIATOR SUPPORT** | | | | | | |
| 22 | E01 | Remove/Install | Sight shield Chevrolet | | | | 0.2T | Body | |
| 23 | E01 | | **FENDER** | | | | | | |
| 24 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: RT Fender | | | | | | 0.2T |
| 25 | S01 | Refinish | Additional Prepping of Old Paint<br>NOTE: Fender | | | | | | 0.5T |
| 26 | S01 | Repair | RT Fender | | | | 4.0T | Body | 2.0T |
| 27 | E01 | | Add for Clear Coat | | | | | | 0.8T |
| 28 | S01 | | Add for Edging | | | | | | 0.5T |
| 29 | S01 | | Add for Clear Coat | | | | | | 0.1T |
| 30 | S01 | Refinish | Mask for Primer<br>NOTE: Fender | | | | | | 0.2T |
| 31 | S01 | Refinish | Feather edge, Prime & Block High Build Primer<br>NOTE: Fender | | | | | | 0.1T |
| 32 | S01 | Refinish | Mask Recessed Edges For Overspray<br>NOTE: RT Fender | | | | | | 0.5T |
| 33 | S01 | Refinish | Sand, Compound & Polish<br>NOTE: RT Fender | | | | | | 0.7T |
| 34 | E01 | Remove/Replace | RT Protector | 1 | 54.38T | OEM | 0.1T | Body | |
| 35 | S01 | Repair | Removal of RT Protector | | | | 0.1T | Body | |
| 36 | E01 | Remove/Install | RT R&I fender assy<br>NOTE: Required to paint cab side. | | | | 2.0T | Body | |
| 37 | S01 | Remove/Install | Misc clips from fender for paint | | | | 0.3T | Body | |
| 38 | S01 | Remove/Install | RT Fender upper bracket | | | | 0.1T | Body | |
| 39 | S01 | Remove/Install | RT Rear insulator | | | | 0.2T | Body | |
| 40 | S01 | Remove/Install | RT Fender liner | | | | 0.0T | Body | |
| 41 | E01 | | **ELECTRICAL** | | | | | | |
| 42 | E01 | Remove/Install | RT Base | | | | 0.6T | Body | |
| 43 | E01 | Remove/Install | Antenna mast | | | | 0.0T | Body | |
| 44 | E01 | | **WINDSHIELD** | | | | | | |
| 45 | E01 | Remove/Install | Reveal molding | | | | 0.5T | Body | |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM                                                                 Page 2

Final Bill

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 46 | S01 | Repair | Windshield GM, w/lane departure<br>NOTE: Lift molding for paint overspray | | | | | 0.5T |
| 47 | E01 | | **CAB** | | | | | |
| 48 | E01 | Remove/Install | RT Roof molding | | | | 0.3T Body | |
| 49 | E01 | Remove/Install | RT Front sill plate standard black | | | | 0.2T Body | |
| 50 | E01 | Remove/Install | RT Lwr ctr plr trim black | | | | 0.2T Body | |
| 51 | E01 | Remove/Install | RT Rear sill plate black | | | | 0.1T Body | |
| 52 | E01 | Remove/Install | RT Lock pillar trim shale | | | | 0.4T Body | |
| 53 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: Uniside | | | | | 0.5T |
| 54 | S01 | Refinish | Additional Prepping of Old Paint<br>NOTE: Uniside | | | | | 1.0T |
| 55 | S01 | Repair | RT Uniside assy | | | | 3.0T Body | 6.4T |
| 56 | E01 | | Overlap Major Non-Adj. Panel | | | | | (0.2)T |
| 57 | E01 | | Add for Clear Coat | | | | | 1.2T |
| 58 | S01 | Refinish | Mask all 4 door hinges and misc holes | | | | | 0.5T |
| 59 | S01 | Refinish | Mask for Primer<br>NOTE: Uniside | | | | | 0.2T |
| 60 | S01 | Refinish | Feather edge, Prime & Block High Build Primer<br>NOTE: Uniside | | | | | 1.0T |
| 61 | E01 | Remove/Install | RT W'strip on body rear door | | | | 0.4T Body | |
| 62 | E01 | Remove/Install | RT W'strip on body front door | | | | 0.4T Body | |
| 63 | S01 | Remove/Install | Step bar assy black<br>NOTE: Running Board | | | | 0.7T Body | |
| 64 | E01 | Remove/Replace | RT Tape | 1 | 21.95T | OEM | 0.2T Body | |
| 65 | S01 | Repair | Removal of RT Tape and adhesive<br>NOTE: This is the clear plastic strip that runs along the rear of cab and acts as a rub strip for bed. | | | | 0.2T Body | |
| 66 | E01 | | **FRONT DOOR** | | | | | |
| 67 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: Front Door | | | | | 0.2T |
| 68 | S01 | Refinish | Additional Prepping of Old Paint<br>NOTE: RT Front door | | | | | 0.5T |
| 69 | E01 | Refinish | RT Door shell double & crew cab | | | | | 2.4T |
| 70 | E01 | | Overlap Major Non-Adj. Panel | | | | | (0.2)T |
| 71 | E01 | | Add for Clear Coat | | | | | 0.4T |
| 72 | S01 | Refinish | Sand, Compound & Polish<br>NOTE: Rt Front Door | | | | | 1.0T |
| 73 | S01 | Repair | Removal of Old Molding and adhesive<br>NOTE: Rt Front Door | | | | 0.5T Body | |
| 74 | E01 | Remove/Replace | RT Body side mldg double & crew cab body color | 1 | 223.89T | OEM | 0.3T Body | 0.6T |
| 75 | S01 | | Overlap Minor Panel | | | | | (0.2)T |
| 76 | E01 | | Add for Clear Coat | | | | | 0.1T |
| 77 | E01 | Remove/Install | RT Belt molding double & crew cab black | | | | 0.3T Body | |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM                                                                                           Page 3

Final Bill

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| # | Code | Operation | Description | | | | | | |
|---|------|-----------|-------------|--|--|--|--|--|--|
| 78 | E01 | Remove/Install | RT R&I mirror | | | | 0.3T | Body | |
| 79 | E01 | Remove/Install | RT Handle, outside body color | | | | 0.3T | Body | |
| 80 | E01 | Remove/Install | RT Striker | | | | 0.2T | Body | |
| 81 | E01 | Remove/Install | RT R&I trim panel | | | | 0.4T | Body | |
| 82 | E01 | Remove/Install | RT Water deflector | | | | 0.2T | Body | |
| 83 | E01 | Remove/Install | RT R&I door assy | | | | 1.0T | Body | |
| 84 | S01 | Repair | Add for wiring options | | | | 0.5T | Body | |
| 85 | S01 | Refinish | mask RT Front door opening to protect interior while sanding | | | | | | 0.3T |
| 86 | S01 | Remove/Install | Vent Shade Front door<br>NOTE: attached with 2-faced tape | | | | 0.5T | Body | |
| 87 | S01 | Repair | Removal of adhesive on Vent and body | | | | 0.5T | Body | |
| 88 | S02 | Remove/Replace | Clean and retape molding | | | | 0.3T | Body | |
| 89 | S02 | Remove/Replace | Adhesion promoter wipe | | | | | | |
| 90 | E01 | | **REAR DOOR** | | | | | | |
| 91 | E01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: TAR/WAX/DEGREASE & CLEAN prior Prepping for paint is for NEW & Old previously painted parts. This is required by the paint manufacturer for warranty and to remove contaminants prior paint. | | | | | | 0.2T |
| 92 | S01 | Refinish | Additional Prepping of Old Paint<br>NOTE: RT Rear door | | | | | | 0.5T |
| 93 | E01 | Repair | RT Door shell | | | | 4.5T | Body | 2.3T |
| 94 | E01 | | Overlap Major Adj. Panel | | | | | | (0.4)T |
| 95 | E01 | | Add for Clear Coat | | | | | | 0.4T |
| 96 | S01 | Repair | Sand and spot paint inside door shell before cavity wax<br>NOTE: See photos | | | | | | 1.0T |
| 97 | S01 | Refinish | Mask for Primer<br>NOTE: Rt Rear Door | | | | | | 0.2T |
| 98 | S01 | Refinish | Feather edge, Prime & Block High Build Primer<br>NOTE: Rt Rear Door | | | | | | 1.0T |
| 99 | S01 | Refinish | Sand, Compound & Polish<br>NOTE: Rt Rear Door | | | | | | 0.8T |
| 100 | E01 | Remove/Install | RT R&I door assy | | | | 0.8T | Body | |
| 101 | S01 | Repair | Add for wiring options | | | | 0.5T | Body | |
| 102 | S01 | Remove/Install | Vent Shade from Rear door | | | | 0.5T | Body | |
| 103 | S01 | Repair | Adhesive removal on vent and body | | | | 0.3T | Body | |
| 104 | S02 | Remove/Replace | Clean and retape Vent Shade | | | | 0.2T | Body | |
| 105 | S02 | Remove/Replace | Adhesion wipe | | | | | | |
| 106 | E01 | Remove/Install | RT Belt molding black | | | | 0.3T | Body | |
| 107 | E01 | Remove/Replace | RT Body side mldg body color | 1 | 99.95T | OEM | 0.3T | Body | 0.5T |
| 108 | E01 | | Overlap Minor Panel | | | | | | (0.2)T |
| 109 | E01 | | Add for Clear Coat | | | | | | 0.1T |
| 110 | E01 | Remove/Install | RT Handle, outside body color | | | | 0.3T | Body | |
| 111 | E01 | Remove/Install | RT Striker | | | | 0.2T | Body | |
| 112 | E01 | Remove/Install | RT R&I trim panel | | | | 0.4T | Body | |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM

Page 4

**Final Bill**

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 113 | S01 | Refinish | mask RT rear door opening to protect interior while sanding | | | | | | 0.3T |
| 114 | E01 | | **PICK UP BOX** | | | | | | |
| 115 | S01 | Remove/Replace | Bed dolly Rental<br>NOTE: 7 days | 1 | 150.00T | Other | | | |
| 116 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: Box assembly | | | | | | 0.2T |
| 117 | S01 | Remove/Replace | RT Outer panel Chevrolet | 1 | 833.30T | OEM | 10.5T | Body | 3.3T |
| 118 | S01 | | Overlap Major Adj. Panel | | | | | | (0.4)T |
| 119 | S01 | | Add for Clear Coat | | | | | | 0.6T |
| 120 | S01 | Refinish | Backside refinish before installation | | | | | | 2.0T |
| 121 | S01 | Repair | backside due to weld damage<br>NOTE: Inside front flange and taillight pocket flange. Refinishing is due to 2 seperate colors needing to be applied.<br>See photos | | | | 1.0T | Body | 1.5T |
| 122 | S01 | Refinish | add for second color to backside refinishing<br>NOTE: Backside is painted a green so when the bed was welded on we needed to go back and dust white overspray and clear over green to duplicate factory appearance.<br>See photos | | | | | | 0.5T |
| 123 | S01 | | Add for Clear Coat | | | | | | 0.1T |
| 124 | S01 | Refinish | Add for Chipguard | | | | | | 1.0T |
| 125 | S01 | Refinish | Sand, Compound & Polish<br>NOTE: Box assembly | | | | | | 1.2T |
| 126 | S01 | Repair | Remove old bonding adhesive | | | | 1.0T | Body | |
| 127 | S01 | Remove/Replace | Bonding material as per OE Procedures for bedrail top plate<br>NOTE: 3M 8116 Invoiced on itemized paint and material invoiced. | | | | 0.5T | Body | |
| 128 | S01 | Remove/Replace | Weld Through Primer Prior Weld | | | | 0.5T | Body | |
| 129 | S01 | Remove/Install | R&I box assy<br>NOTE: Box had to be R&I'd several times to fit the out bed panel. | | | | 2.5T | Body | |
| 130 | S01 | Remove/Install | Box assembly 2nd time to confirm fitment of bedside to cab<br>NOTE: see photos | | | | 1.5T | Body | |
| 131 | S01 | Refinish | Prime all weld flanges after weld and before paint<br>NOTE: Both sides of every flange required etching of bare metal and as per MOTORS refinish times this step is a non included operation see p-pages under refinish time premise | | | | | | 1.0T |
| 132 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding<br>NOTE: RT outer wheelhouse | | | | | | 0.3T |
| 133 | S01 | Refinish | Additional Prepping of Old Paint<br>NOTE: RT Outer Wheelhouse | | | | | | 0.2T |
| 134 | S01 | Repair | RT Wheelhouse Chevrolet | | | | 2.0T | Body | 1.0T |
| 135 | S01 | | Add for Clear Coat | | | | | | 0.2T |
| 136 | S01 | Refinish | Mask Recessed Edges For Overspray<br>NOTE: Precision masking for overspray around wheelhouse and Rhino lining | | | | | | 0.5T |
| 137 | S01 | Refinish | Touch up edge of Rhino lining black<br>NOTE: See photos. Edge of black Rhino lining got white paint on it due to | | | | | | 0.5T |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM                                                                                                                 Page 5

Final Bill

## RO Number: *3854*

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | the heavy texture of lining material. | | | | | | |
| 138 | E01 | Remove/Replace | RT Protector front | 1 | 16.85T | OEM | | 0.2T | Body |
| 139 | S01 | Remove/Install | RT Filler | | | | | 0.3T | Body |
| 140 | S01 | Remove/Replace | Mask and protect inside of Bed from welding sparks | | | | | 1.0T | Body |
| 141 | S01 | Remove/Replace | Mask inside of bed for paint overspray | | | | | | 1.0T |
| 142 | S01 | Repair | Remove grommets and nutserts for painting | | | | | 0.3T | Body |
| 143 | S01 | | **************×TAILGATE********** ********** | | | | | | |
| 144 | E01 | Remove/Install | R&I tailgate assy | | | | | 0.0T | Body |
| 145 | S01 | Refinish | Tar, Wax & Degrease Old & New Parts Prior Sanding NOTE: Tailgate | | | | | | 0.2T |
| 146 | E01 | Refinish | Tail gate w/o gate assist | | | | | | 2.3T |
| 147 | E01 | | Overlap Major Non-Adj. Panel | | | | | | (0.2)T |
| 148 | E01 | | Add for Clear Coat | | | | | | 0.4T |
| 149 | S01 | Refinish | Mask Recessed Edges For Overspray NOTE: Tailgate | | | | | | 0.5T |
| 150 | S01 | Refinish | Additional Prepping of Old Paint NOTE: Tailgate | | | | | | 0.5T |
| 151 | S01 | Refinish | Sand & Hand Rubup from Recessed Masking NOTE: Tailgate | | | | | | 0.5T |
| 152 | S01 | Refinish | Sand, Compound & Polish NOTE: Tailgate | | | | | | 0.7T |
| 153 | S01 | Remove/Install | Cover panel | | | | | 0.2T | Body |
| 154 | E01 | Remove/Install | Handle w/camera | | | | | 0.3T | Body |
| 155 | E01 | Remove/Replace | Upper molding | 1 | 99.95T | OEM | | 0.3T | Body |
| 156 | E01 | Remove/Replace | RT Deflector Chevrolet | 1 | 37.85T | OEM | | 0.2T | Body |
| 157 | E01 | Remove/Replace | RT Protector rear Chevrolet | 1 | 23.22T | OEM | | 0.2T | Body |
| 158 | E01 | Remove/Replace | RT Upper molding Chevrolet | 1 | 179.95T | OEM | | 0.3T | Body |
| 159 | S01 | Repair | RT Front pillar | | | | | 0.2T | Body | 0.5T |
| 160 | S01 | | Add for Clear Coat | | | | | | 0.1T |
| 161 | | Remove/Install | RT Striker | | | | | 0.2T | Body |
| 162 | S01 | Remove/Install | RT Latch bumper | | | | | 0.2T | Body |
| 163 | E01 | | **REAR LAMPS** | | | | | | |
| 164 | E01 | Remove/Install | RT Tail lamp assy w/o LED w/o High Dessert pk | | | | | 0.0T | Body |
| 165 | E01 | | **REAR BUMPER** | | | | | | |
| 166 | E01 | Remove/Install | R&I bumper assy | | | | | 2.4T | Body |
| 167 | E01 | Remove/Install | Deduct for Overlap | | | | | (0.8)T | Body |
| 168 | S01 | Refinish | Car Cover for Primer | | | | | | 0.2T |
| 169 | S01 | Refinish | Car Cover for Paint Overspray | | | | | | 0.2T |
| 170 | E01 | Refinish | Tint Color | | | | | | 0.5T |
| 171 | S01 | Refinish | Formulate Factory Pack Color (Per Color) NOTE: 2 seperate colors .5 each | | | | | | 1.0T |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

Final Bill

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 172 | E01 | Remove/Replace | Sprayout Cards | 1 | 15.00T | Other | | 0.5T |
| 173 | S02 | Remove/Replace | Chip Guard Spayouts | | | | | 0.5T |
| 174 | E01 | Repair | Disconnect & Reconnect Battery for Repairs | | | | 0.1T | Mech |
| 175 | S01 | Repair | Reset Driver Presets | | | | 0.5T | Body |
| 176 | E01 | Remove/Replace | Solid Waste Disposal | 1 | 25.00T | Other | 0.5T | Body |
| 177 | S01 | Remove/Replace | Hazardous Waste Disposal | | | | 0.3T | Body |
| 178 | S02 | Remove/Replace | Sort, Store, Bag & Tag Parts (Old & New) | | | | 1.0T | Body |
| 179 | E01 | Repair | Test Drive Vehicle | | | | 0.5T | Body |
| 180 | S01 | Remove/Replace | Nuts (metal inserts) | 10 | 52.50T | Other | 0.3T | Body |
| 181 | S01 | Remove/Replace | Additional bay rental for bed 1 day | 1 | 175.00T | Other | | |
| 182 | S01 | Remove/Replace | Paint and Materials as per invoice | 1 | 2,123.14T | Other | | |
| 183 | S01 | Remove/Replace | Booth Bake Cycle | 1 | 100.00T | Other | | |
| | | | NOTE: This is a rental cost of the Paint booth which includes the Gas to run during paint operations and then to run through Baking cycle at 160 degress to properly cure paint products as per BASF mandates and warranty. This charge also covers the cost of maintenance including the time to clean booth from overspray, lighting replacements, filter changes (NOT FILTER COSTS), igniters, VFD's and all other costs associated to equipment. | | | | | |
| 184 | S01 | Remove/Replace | Welder setup and destructive test | 1 | 10.00T | Other | 1.0T | Body |
| 185 | S01 | Remove/Replace | Welding spotter | 1 | 75.00T | Other | | |
| 186 | S01 | Remove/Replace | Welding wire tip and spatter | 1 | 11.95T | Other | | |
| 187 | S01 | Remove/Replace | Supplemental charge as per contract | 1 | 125.00T | Other | | |
| | | | NOTE: There may be more supplement charges added if Dave Gross from Travelers does not pay for all labor procedures performed on this final invoice. | | | | | |

| Estimate Totals | Discount $ | Markup $ | Rate $ | Total Hours | Total $ |
|---|---|---|---|---|---|
| Parts | | | | | 5,451.38 |
| Labor, Body | | | 90.00 | 64.2 | 5,778.00 |
| Labor, Refinish | | | 90.00 | 52.1 | 4,689.00 |
| Labor, Mechanical | | | 105.00 | 0.1 | 10.50 |
| E.P.C. | | | | | 10.00 |
| **Subtotal** | | | | | **15,938.88** |
| Sales Tax | | | | | 956.33 |
| **Grand Total** | | | | | **16,895.21** |
| **Net Total** | | | | | **16,895.21** |

| Estimate Version | Total $ |
|---|---|
| Original | 14,840.31 |
| Supplement S01 | 2,112.14 |
| Supplement S02 | (57.24) |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman = Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech = Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM                                                                                                                     Page 7

**Final Bill**

## RO Number: 3854

2018 CHEV Silverado 1500 LT1 Doublecab 143.5" WB 4WD 4D P/U 8-5.3L Flex Fuel Direct Injection White

| | | |
|---|---|---:|
| Insurance Total $: | | 0.00 |
| Received from Insurance $: | | 0.00 |
| Balance due from Insurance $: | | 0.00 |
| | | |
| Customer Total $: | | 16,895.21 |
| Received from Customer $: | | 7,374.33 |
| Burke, Martin | 5/20/2019 | 2,797.80 |
| Burke, Martin | 5/24/2019 | 3,148.57 |
| Burke, Martin | 6/10/2019 | 1,427.96 |
| Balance due from Customer $: | | 9,520.88 |

T = Taxable Item, RPD = Related Prior Damage, AA = Appearance Allowance, UPD = Unrelated Prior Damage, PDR = Paintless Dent Repair, A/M = Aftermarket, Rechr = Rechromed, Reman =
Remanufactured, OEM = New Original Equipment Manufacturer, Recor = Re-cored, RECOND = Reconditioned, LKQ = Like Kind Quality or Used, Diag = Diagnostic, Elec = Electrical, Mech =
Mechanical, Ref = Refinish, Struc = Structural

6/10/2019 6:41:23 PM                                                                                                              Page 8

# EXHIBIT C

# EXHIBIT C

**CONVENIENCE COLLISION, INC.**
Matthew Zielenbach
251 Erdman Avenue
Bangor, PA 18013
Matthew@convenientcollision.com
Phone (610) 599-5056
Fax (610) 599-5057

Vehicle owner: _Martin Burke
Vehicle Vin:   1GCVKREC3JZZ38557
Insurance Company: _Travelers___
Claim#: _1BG8742001____

Dear Mr. Burke

This letter is to confirm and follow up on our previous discussions regarding your vehicle. Your vehicle was delivered/towed to us at your request, which sustained damage due to a collision on or about April 9, 2019. As you are aware, Travelers Insurance Company has not yet agreed to pay in full for our work performed and/or Total Loss Charges. Ultimately, you as the customer are responsible for the outstanding balances.

In exchange for Convenience Collision, Inc. returning your vehicle to you upon completion of repairs or refusal to pay Total loss charges by your insurance company, and deferring collection of the balance due for our work, you had agreed to sign an Assignment of Proceeds (see below). This allows us to collect insurance proceeds on your behalf directly from your insurance company or any at fault parties.

Your signature on this letter also serves as consent and authorization for Convenience Collision, Inc. to take legal action to enforce our rights and/or your rights in connection with the repair and or Charges of your vehicle. You acknowledge and agree that any and all monies and/or other relief obtained by Convenience Collision, Inc. via judgment, settlement, arbitration award, or other such means are the sole property of Convenience Collision, Inc. You acknowledge and agree that you are waiving any and all rights and/or claims to such amounts.

If you have any questions about this letter, or if you wish to discuss anything regarding your vehicle, please do not hesitate to contact me at the phone number above. Thank you in advance for your courtesies and cooperation.

Most sincerely,

CONVENIENCE COLLISION, Inc.
Matthew Zielenbach, Owner

I hereby assign to CONVENIENCE COLLISION, Inc. (a.k.a. "The Shop") my rights to any and all insurance proceeds for The Shop's repair and/or Total Loss charges, of my vehicle in connection with the loss sustained on or about April 9, 2019. I grant my consent and authorization for the Shop to collect all outstanding amounts due in connection with their work and or Total Loss on my vehicle, plus any and all ancillary relief, including but not limited to punitive damages, interest, attorney fees, court costs, and equitable remedies; and to commence litigation, and/or other adversarial proceedings, against Traveler Insurance Company and/or any other necessary parties:

Signature:_____   Date_5-24_____



**CONVENIENCE COLLISION**
INCORPORATED

### Acceptance Confirmation

I, Marty Burke, (the "customer") have been given the opportunity to inspect my vehicle of which, I am fully satisfied with the quality and workmanship of the repairs performed. I understand that Convenience Collision, Inc. (a.k.a. "CCI or The Shop") is still owed monies for work performed, delay fees, storage along with administration costs associated with the handling of my claim or handling a total loss on my behalf. CCI has agreed to release the vehicle to me while they attempt to get my invoice paid on my behalf from my insurance company or any other necessary parties, as stated in the assignment of proceeds, which I have also signed and agree with.

Furthermore, I agree that I will fully and unconditionally hold harmless the repair facility (CCI), its employees, directors, affiliates, owners, managers, and their heirs, from all actions, legal or otherwise, known or unknown, and from expenses incurred to defend such actions from any entity, insurance company, third party, or individual that may elect to take any such action associated with this vehicle and/or my claim.

If I have any questions relating to the reasonableness or accuracy of the charges, I agree to notify the shop, in writing, of the specific concerns I may have. I understand that, at that time, the repair facility will address my concerns directly with me. I understand that all the repairer's charges are my sole responsibility, regardless of who owns the vehicle, and I realize that it is my sole responsibility to deal with the insurer for payment of these charges and expenses even though CCI is assisting with my reimbursement of claim, I am ultimately the only person responsible for repairs performed and authorized.

By my signature, I have thoroughly read, understand and agree to the aforementioned.

Vehicle Owner:

_____                    Date 5-24

Print

_____



# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
## COMMONWEALTH OF PENNSYLVANIA
### CIVIL DIVISION

CONVENIENCE COLLISION, INC.,
Plaintiff

v.

TRAVELERS INDEMNITY COMPANY,
Defendant

No. CV-2021- *03907*

JURY TRIAL DEMANDED

## PRAECIPE FOR ENTRY OF APPEARANCE

Kindly enter my appearance on behalf of the PLAINTIFF, Convenience Collision, Inc., in the above-captioned matter.

Respectfully submitted,

Jeremy F. Clark, Esquire
Attorney for the Plaintiff
Attorney I.D.  307131
318 Spring Garden Street
Easton, PA  18042
p. (484) 602-5297
lawyer@jeremyfclark.com

DATE:  June 7,2021

COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA.
2021 JUN -7 A 11: 43